**Case No. 24-6703**

---

## THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

AMERICAN ENCORE, *et al.*,

*Plaintiffs-Appellees,*

*v.*

ADRIAN FONTES, *et al.*,

*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the District of Arizona

No. 2:24-cv-01673-MTL

---

### APPELLANTS' EXCERPTS OF RECORD – VOLUME 4 OF 5

---

Nathan T. Arrowsmith (No. 031165)     Karen J. Hartman-Tellez (No. 021121)
Joshua M. Whitaker (No. 032724)       Kara Karlson (No. 029407)
Luci D. Davis (No. 035347)            Kyle Cummings (No. 032228)
Nathan.Arrowsmith@azag.gov            Karen.Hartman@azag.gov
Joshua.Whitaker@azag.gov              Kara.Karlson@azag.gov
Luci.Davis@azag.gov                   Kyle.Cummings@azag.gov
ACL@azag.gov                          AdminLaw@azag.gov

*Attorneys for Defendant/Appellant*     *Attorneys for Defendant/Appellant*
*Arizona Attorney General*              *Arizona Secretary of State*
*Kristin K. Mayes*                      *Adrian Fontes*

OFFICE OF THE ARIZONA
ATTORNEY GENERAL (Firm #14000)
2005 North Central Ave.
Phoenix, Arizona 85004
(602) 542-3333

# Addendum 2



State of Arizona

# 2023

# ELECTIONS PROCEDURES MANUAL

**ADRIAN FONTES**
SECRETARY OF STATE
STATE OF ARIZONA

Arizona Department of State - Office of the Secretary of State
1700 W. Washington St., FL 7, Phoenix, Arizona 85007

azsos.gov | 1-877-THE VOTE (843-8683)

# ARIZONA
# ELECTIONS PROCEDURES MANUAL

A PUBLICATION OF THE ARIZONA SECRETARY OF STATE'S OFFICE
ELECTIONS SERVICES DIVISION

## INTRODUCTION
## FROM SECRETARY OF STATE ADRIAN FONTES

### December 2023

I am pleased to provide you with the 2023 Elections Procedures Manual to county, city, and town election officials throughout Arizona. Updating the Election Procedures Manual has been one of my Administration's highest priorities. We worked in close partnership with County Recorders, Elections Directors, and their staff to ensure that the 2023 Elections Procedures Manual will provide the maximum degree of correctness, impartiality, uniformity, and efficiency in election procedures across Arizona.

Open and honest elections are at the heart of our democratic republic. It's a process made possible by the continued dedication of election workers, from poll workers to election officers. Their efforts make for a rewarding experience for Arizona voters. Through the unrelenting dedication and vigilance of election workers throughout the State, our elections are secure, accurate, and accessible. We are deeply grateful for their invaluable contributions.

Sincerely,

Adrian Fontes
Arizona Secretary of State



## STATE OF ARIZONA
## OFFICE OF THE GOVERNOR

**KATIE HOBBS**
GOVERNOR

EXECUTIVE OFFICE

December 30, 2023

The Honorable Adrian Fontes
Arizona Secretary of State
1700 West Washington Street, 7th Floor
Phoenix, AZ 85007

Dear Secretary Fontes,

My Office has reviewed the 2023 Election Procedures Manual (EPM) that you submitted for
final approval on December 30, 2023. In accordance with A.R.S. § 16-452(B), I hereby approve
the 2023 Elections Procedures Manual.

As a former Secretary of State, I understand the immense amount of work required by state,
county, and local officials to produce this important document. This Manual builds on the work
done on the 2019 EPM and 2021 draft EPM to ensure our elections achieve the maximum
degree of correctness, impartiality, uniformity and efficiency. I'm confident that Arizona's
elections, as well as our voters and election officials, will benefit from this updated EPM.

Sincerely,

Katie Hobbs
Governor
State of Arizona



## OFFICE OF THE ARIZONA ATTORNEY GENERAL
### STATE OF ARIZONA

**KRIS MAYES**
ATTORNEY GENERAL

December 30, 2023

The Honorable Adrian Fontes
Arizona Secretary of State
1700 W. Washington Street
Phoenix, Arizona 85007

      Re:    Approval of the 2023 Elections Procedures Manual

Dear Secretary Fontes:

      My office has reviewed the Elections Procedures Manual submitted on December 30, 2023, as required by A.R.S § 16-452(B).  Based upon our review, we find the submitted Manual complies with Arizona's election statutes.

      An updated Elections Procedures Manual is critical to the fair, consistent, and orderly administration of elections in Arizona.  Therefore, I am pleased to be able to approve the Manual as submitted on December 30, 2023.

Sincerely,

Kris Mayes
Attorney General
State of Arizona

cc:    Governor Katie Hobbs

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

## TABLE OF CONTENTS

CHAPTER 1: Voter Registration ................................................................................. 1

   I.     Voter Registration Forms .......................................................................... 1

      A. County/State Responsibility for Supplying Forms ................................ 1

      B. Eligibility to Use FPCA and FWAB Forms ......................................... 2

   II.    Voter Registration Requirements ............................................................. 2

      A. Citizenship Requirement ...................................................................... 3

      B. Age Requirement for Registration ...................................................... 14

      C. Residency Requirements for Registration ........................................... 15

      D. Effect of Felony Conviction on Qualification to Register to Vote ..... 17

      E. Effect of Incapacitation on Qualification to Register to Vote ............ 18

      F. Effect of Inability to Sign or Make a Mark ........................................ 18

   III.   Voter Registration Assistance Agencies ................................................ 18

      A. Designated Voter Registration Assistance Agencies .......................... 18

      B. Tracking and Reporting Source of Registration .................................. 19

   IV.   Voter Registration Processing Procedures ............................................. 20

      A. Statewide Voter Registration Database ............................................... 20

      B. Registration Codes in the Statewide Voter Registration Database ...... 21

      C. Minimum Required Information on Registration Forms ...................... 22

      D. Political Party Preference .................................................................... 24

      E. Date of Registration ............................................................................ 25

      F. Initial Duplicate Checking Within the County ................................... 25

      G. Electronic Verification Procedures ..................................................... 26

      H. Issuance of Voter Registration Cards ................................................. 27

      I. Help America Vote Act Identification Requirements ........................... 28

   V.    Protection of Secured Registrants .......................................................... 29

      A. Marking Secured Records ................................................................... 30

      B. Responding to Public Records Requests ............................................. 30

      C. Creating Signature Rosters or Uploading E-Pollbook Data ............... 31

      D. Issuance of Official Mail and Election Documents ............................ 31

      E. Signing Candidate, Initiative, Referendum, or Recall Petitions.......... 31

      F. Terminating Secured Registrant Status ............................................... 32

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

VI.    Registration Processing During "Books Closed"..................................................... 32

VII.   Eligibility to Vote......................................................................................................... 33

   A. Age Requirements to Vote in the Next Election .................................................. 33

   B. Residency Requirements to Vote in the Next Election ..................................... 34

VIII.  Registration Deadline to Vote in Next Election ................................................... 35

   A.   Date of Receipt of Voter Registrations ........................................................... 35

   B.   Voter Registration Form Received After Deadline ...................................... 36

   C.   When Registration Deadline Falls on a Weekend or Holiday...................... 36

IX.    Voter Registration List Maintenance ..................................................................... 36

   A. Deceased, Felon, and Incapacitated Registrants ................................................ 36

   B. Secretary of State Duties to Forward Registrant Information.......................... 39

   C. County Recorders' Duty to Cancel Registrant Information.............................. 41

   D. Cancellation through NVRA Process Due to Address Changes....................... 45

   E.  Systematic Cancellations within 90 Days of Election Prohibited .................... 48

X.     Reporting Voter Registration Information ............................................................. 49

   A. Voter Registration Statistics................................................................................... 49

   B. "Federal-Only" Registration and Ballot Report ................................................ 50

XI.    Provision of Registration Data to Third Parties ................................................... 50

   A. Precinct Lists to Recognized Political Parties..................................................... 50

   B. Use of County Registration Rolls by Political Subdivision ............................... 52

   C. Public Records Requests by Third Parties ........................................................... 52

XII.   Minority Language Assistance................................................................................... 54

CHAPTER 2:  Early Voting ......................................................................................... 55

  I.     Ballot-By-Mail .............................................................................................................. 55

   A. One-Time Requests to Receive a Ballot-by-Mail ............................................... 55

   B. Requests to Be Placed on the Active Early Voting List.................................... 58

   C. Creation and Preparation of Early Ballots.......................................................... 64

   D. Mailing Ballots-by-Mail .......................................................................................... 67

   E. Issuing Replacement Ballots-by-Mail ................................................................... 70

   F. Emergency UOCAVA Early Balloting Procedures ............................................. 70

   G. Reporting UOCAVA Transmission Statistics....................................................... 70

   H. Deadline to Return Ballots-by-Mail....................................................................... 71

   I. Ballot Drop-Off Locations and Drop-Boxes ........................................................ 71

   J. Reporting Ballot-by-Mail Requests and Returns ................................................ 74

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

II.      On-Site Early Voting ............................................................................................ 75

  A. Posting Notice of Write-In and Withdrawn Candidates ................................... 75

  B. Applicability of Voter ID Requirements ......................................................... 75

  C. Requirements and Security Procedures for Accessible Voting Devices ........... 76

  D. Requirements for Ballot Security and Transport .............................................. 76

III.     Emergency Voting ................................................................................................ 76

  A. Establishing Emergency Voting Centers .......................................................... 76

  B. Identification and Signed Statement Requirements .......................................... 77

IV.     Special Election Boards ....................................................................................... 77

  A. Time Periods for Requesting a Special Election Board .................................... 78

  B. Identification and Signed Statement Requirements .......................................... 78

V.      Challenges to Early Ballots ................................................................................. 79

  A.    Time Periods for Early Ballot Challenges ................................................. 79

  B.    Grounds for Challenging an Early Ballot .................................................. 79

  C.    Notice of an Early Ballot Challenge .......................................................... 80

  D.    Signature Verification of Challenged Early Ballots .................................. 81

  E.    Determination of Early Ballot Challenges ................................................. 81

VI.     Processing and Tabulating Early Ballots ............................................................. 82

  A. County Recorder Responsibilities .................................................................... 82

  B. Early Ballot Board Responsibilities ................................................................. 85

  C. Timing for Tabulation of Early Ballots and Reporting of Results .................... 87

VII.    Eligible Voters in Jails or Detention Facilities .................................................... 87

CHAPTER 3:  Ballot-by-Mail Elections .......................................................................... 88

I.      Eligibility to Hold a Ballot-by-Mail Election ..................................................... 88

II.     Approval to Hold a Ballot-by-Mail Election ....................................................... 88

III.    Preparing and Mailing Ballots ............................................................................ 89

IV.     Methods to Return or Replace Ballots ................................................................. 89

V.      Processing Voted Ballots in a Ballot-by-Mail Election ....................................... 90

VI.     Post-Election Reporting Requirements ................................................................ 90

CHAPTER 4:  Voting Equipment ..................................................................................... 91

I.      Logic and Accuracy (L&A) Testing .................................................................... 91

  A. Timeframe to Conduct L&A Testing ................................................................ 91

  B. Public Notice of L&A Test ............................................................................... 93

  C. Observers for L&A Test .................................................................................... 93

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

D. Process for Conducting L&A Tests by the Secretary of State ........................................ 93

E. L&A Testing Standards ........................................................................................ 98

F. County L&A Testing ........................................................................................... 100

G. Retention of L&A Programs, Test Ballots, and Database ............................................ 100

II.      Security Measures for Electronic Voting Systems ................................................ 100

A. Physical Security of the Electronic Voting System ................................................... 101

B. Data Security of the Electronic Voting System ....................................................... 102

C. Removable Electronic Storage Devices Used with the Voting System ........................... 102

D. Gateway Computer ........................................................................................... 104

E. E-Pollbooks and Ballot-on-Demand Printers .......................................................... 105

III.     Contingency and Incident Response Planning ..................................................... 106

A. Election Operations Contingency Plan .................................................................. 106

B. Incident Response Plan ...................................................................................... 107

C. Tabulation Contingency Plan .............................................................................. 107

D. Election Program Contingency File ...................................................................... 108

CHAPTER 5:  Accommodating Voters with Disabilities ................................................. 109

I.      Voter Registration Information .......................................................................... 109

II.     Voting and Voting Location Information .............................................................. 110

III.    Ensuring Accessibility at the Voting Location ...................................................... 111

IV.     Alternative Voting Options .............................................................................. 113

V.      Special Election Boards .................................................................................. 115

CHAPTER 6:  Regulation of Petition Circulators ........................................................ 116

I.      Qualifications for Petition Circulators ................................................................. 116

II.     Circulator Registration and Disclosure Requirements ............................................ 116

A. Paid Circulators ............................................................................................... 117

B. Non-Resident Circulators ................................................................................... 117

C. Circulator Registration Procedures ...................................................................... 118

D. Service of Process on Registered Circulators .......................................................... 120

III.    Signature Gathering and Verification Requirements ............................................... 120

CHAPTER 7:  Presidential Preference Election .......................................................... 121

I.      Timing .......................................................................................................... 121

II.     Eligibility to Participate in the PPE ..................................................................... 121

A. Party Eligibility to Participate in the PPE ............................................................... 121

B. Eligibility to Vote in the PPE .............................................................................. 121

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

C. Candidate Participation in the PPE ............................................................ 122

III.    PPE Ballots ....................................................................................... 122

A. Official Ballot ........................................................................................... 122

B. Ballot Proof .............................................................................................. 123

C. Sample Ballots .......................................................................................... 123

IV.    Conduct of the PPE ........................................................................... 123

A. Voting Locations ....................................................................................... 123

B. Certification of Results ............................................................................. 124

V.    County Reimbursement for the PPE ................................................... 124

CHAPTER 8: Pre-Election Procedures ............................................................ 125

I.    Establishing Precincts and Voting Locations ..................................... 125

A. Establishing Precincts ............................................................................... 125

B. Establishing Voting Locations .................................................................. 125

C. Failure to Timely Establish Polling Places .............................................. 127

D. Consolidation of Polling Places Based on Lack of Candidates ................ 127

E. Factors to Consider When Selecting Voting Locations ............................ 127

F. Use of School Facilities for Voting Locations .......................................... 129

G. Polling Place/Vote Center Emergency Designation ................................. 129

H. Requirement to Allow Electioneering Outside 75-Foot Limit ................. 130

I. Ensuring Accessibility at the Voting Location .......................................... 130

II.    Appointment and Training of Poll Workers and Other Election Staff ...... 130

A. Certified Election Officers ........................................................................ 130

B. Poll Workers .............................................................................................. 131

C. Election Administrator Code of Conduct .................................................. 137

III.    Designation of Political Party and other Observers .......................... 138

A. Appointment Process ................................................................................. 138

B. Observer Credentials ................................................................................. 139

C. Observation at Voting Locations ............................................................... 139

D. Observation at Central Counting Places ................................................... 139

E. Observer Guidelines .................................................................................. 140

IV.    Issuing Pre-Election Notices ............................................................. 141

A. Secretary of State: 120-Day Notice of Offices to be Elected .................. 141

B. County: 210-Day Notice of Election to Local Jurisdictions .................... 141

C. Special Taxing District/Nonpartisan Election Notices ............................. 142

**ER-372**

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

V.      Preparation of Ballots ................................................................................ 142

A. Official Ballot Format ............................................................................. 143

B. Proofing Ballots ...................................................................................... 156

C. Sending Ballot Proofs to Candidates and Political Parties ..................... 156

D. Financial Responsibility for Printing Ballots .......................................... 156

E. Storage and Security of Ballots .............................................................. 157

F. Sample Ballots ......................................................................................... 157

VI.      Language Minority Voting Materials ...................................................... 159

A. Voting Materials Required to Be in Minority Language(s) ....................... 160

B. Types of Elections Requiring Minority Language Voting Materials ......... 160

VII.      Preparation of Signature Rosters and E-PollBooks .............................. 161

VIII.   Preparation of Voting Supplies ................................................................ 163

A. Materials to Be Distributed to Voting Locations ..................................... 163

B. Provisional Ballot Envelope and Affidavit ............................................. 165

IX.      Implementing a Wait Time Reduction Plan ............................................ 166

A. Projecting Voter Turnout ......................................................................... 166

B. Re-Precincting ......................................................................................... 167

C. Staffing and Supplying Voting Locations ............................................... 168

D. Conducting Voter Education .................................................................... 169

E. Developing Contingency Plans ............................................................... 169

F. Emergency Procedures ........................................................................... 170

G. Ballot Box Overflow Procedures ............................................................ 170

H. Complete Power or Unit Failure/Ballot Emergency Bin ......................... 171

I. Determining Optimal Layout ................................................................... 172

J. Wait-Time Reduction Survey .................................................................. 172

K. Public Input ............................................................................................ 172

X.      Canceling An Election .............................................................................. 172

CHAPTER 9: Conduct of Elections/Election Day Operations ................................. 174

I.      Setting up the Voting Location ................................................................. 174

A. Instructions Posted at the Voting Location ............................................. 175

B. Right to Vote a Provisional Ballot .......................................................... 177

C. Notice to Voters ...................................................................................... 178

II.      Opening the Voting Location .................................................................... 179

III.     Preserving Order and Security at the Voting Location ............................ 180

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

A. Enforcing Electioneering Ban ........................................................................... 180

B. Enforcing Photography Ban ............................................................................... 180

C. Enforcing Access Restrictions ........................................................................... 181

D. Preventing Voter Intimidation .......................................................................... 181

IV.    Checking Voter Identification .......................................................................... 183

A. Acceptable Forms of Identification ................................................................... 184

B. ID Requirements for Native American Voters ................................................... 185

V.    Assisting Voters on Election Day ...................................................................... 186

VI.    Issuing Ballots .................................................................................................. 187

A. Issuing a Regular Ballot .................................................................................... 187

B. Issuing a Provisional Ballot ............................................................................... 188

VII.    On-Site Early Ballot Tabulation ...................................................................... 192

VIII.    Challenges to a Voter's Eligibility to Vote ...................................................... 194

IX.    Closing the Voting Location ............................................................................. 196

A. Announcing the Closing of the Polls ................................................................. 196

B. Election Board Close-Out Duties ...................................................................... 197

C. Transport of Ballots, Voting Equipment, and Supplies .................................... 199

CHAPTER 10:  Central Counting Place Procedures ................................................... 200

I.    Central Counting Place Operations .................................................................... 200

A. Deputies/Oath of Office .................................................................................... 201

B. Providing Live Video Recording at Central Counting Place ............................ 201

II.    Establishing Central Counting Place Boards ..................................................... 201

A. Receiving Board ................................................................................................. 202

B. Inspection Board ................................................................................................ 203

C. Central Counting Place Board ........................................................................... 205

D. Ballot Duplication Board ................................................................................... 206

E. Accuracy Certification Board ............................................................................ 211

F. Provisional Ballot Processing ............................................................................ 212

G. Write-In Tally Board .......................................................................................... 216

H. Audit Board ........................................................................................................ 219

I. Snag Board .......................................................................................................... 220

CHAPTER 11:  Hand Count Audit ............................................................................. 221

I.    Designation of Hand Count Board Members ...................................................... 221

II.    Observation of the Hand Count Audit ............................................................... 223

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

III.    Types and Quantities of Ballots to Hand Count............................................................ 223

  A. Ballots Included in the Early Ballot Hand Count ............................................ 223

  B. Ballots Included in the Precinct Hand Count ................................................... 223

IV.    Selecting Precincts/Polling Places to be Hand Counted ............................................. 224

V.    Races Eligible to be Hand Counted............................................................................ 225

  A. Eligible Races Generally.................................................................................. 225

  B. Eligible Races in Special Elections ................................................................ 226

  C. Eligible Races in a PPE .................................................................................. 226

VI.    Selecting Races to be Hand Counted .......................................................................... 226

  A. Selecting Races for Primary and General Elections ...................................... 227

  B. Selecting Races for a PPE .............................................................................. 229

VII.    Hand Count Tabulating Methods ................................................................................ 230

  A. Stacking Method for Optical/Digital Scan Ballots ........................................ 230

  B. Procedures for Conducting the Hand Count ................................................... 232

  C. Review of Election Program by a Special Master........................................... 240

  D. Standard for Determining Voter Intent in Hand Count.................................. 240

  E. Reporting Results of the Hand Count.............................................................. 241

CHAPTER 12:  Post-Election Day Procedures ................................................................... 243

I.    Reporting Election Results.......................................................................................... 243

II.    Conducting Post-Election Logic & Accuracy Test..................................................... 243

III.    Filing Federal Post-Election Reports ......................................................................... 244

  A.    Election Assistance Commission Reporting.................................................... 244

  B.    Department of Justice UOCAVA Reporting ................................................... 244

IV.    Post-Election Reimbursement Requests...................................................................... 244

  A.    Post-Election Reimbursement Requests ......................................................... 244

  B.    Reimbursement for PPE Expenses ................................................................. 244

  C.    Reimbursement for Sample Ballots ................................................................ 245

CHAPTER 13:  Certifying Election Results........................................................................ 246

I.    Determining Election Results...................................................................................... 246

II.    Canvassing the Election .............................................................................................. 247

  A.    County Board of Supervisors' Canvassing Duties ......................................... 247

  B.    Secretary of State's Canvassing Duties ......................................................... 252

  C. City and Town Canvassing Duties.................................................................... 253

  D. Special Taxing District Canvassing Duties...................................................... 253

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

E. County School Superintendent Canvassing Duties ........................................... 253

III.    Conducting an Automatic Recount ............................................................ 254

A.    Vote Margin that Triggers an Automatic Recount ................................. 254

B.    Method of Initiating a Recount ............................................................. 254

C.    Method of Conducting the Recount ...................................................... 255

D.    Hand Count Audit of Recounted Ballots .............................................. 256

IV.    Issuing Certificates of Nomination and Election ..................................... 256

V.    Issuing Ballot Measure Proclamations ..................................................... 257

VI.    Storage of Ballots and Returns of the Election ....................................... 257

CHAPTER 14:  Campaign Finance ................................................................... 259

I.    Campaign Finance Reporting ..................................................................... 259

II.    Campaign Finance Enforcement ............................................................... 259

A.    Initiation of Campaign Finance Complaints ........................................ 260

B. Notice of Complaint and Opportunity for Response and Reply ................... 262

C. Decision by Filing Officer ............................................................................ 265

D. Decision by Enforcement Officer ................................................................. 266

E. Response to Notice by Violation .................................................................. 266

CHAPTER 15:  Election Calendar and Sample Forms ..................................... 268

**ER-376**

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

# CHAPTER 9:
# CONDUCT OF ELECTIONS/ELECTION DAY OPERATIONS

### I.    SETTING UP THE VOTING LOCATION

Upon arriving at the voting location (either on Election Day or the day prior to the election), the election board (at the direction of the officer in charge of the election) must:

1. Ensure that any accessible voting device is set up and in working condition, including any keypad, headphones, and alternative input devices;

2. Post the following documents or notices (1) in plain view in the room where ballots will be cast and (2) in at least one other conspicuous place in and around the polling place:

   • Sample ballots that correspond to the candidates/measures that will appear on the ballot (for precinct-assigned polling places), A.R.S. § 16-510(B); A.R.S. § 16-563(1);

   • "Instructions to Voters and Election Officers" (*see* Chapter 9, Section I(A)(1) below);

   • A notice of voters' "Right to Vote a Provisional Ballot" (*see* Chapter 9, Section I(A)(2) below);

3. Unless the same information is printed on the sample ballot, place a card or poster in each voting booth that contains a "Notice to Voters" in large plain type (*see* Chapter 9, Section I(C) below);

4. Post a list of official write-in candidates in a conspicuous location within the voting location (if applicable), A.R.S. § 16-312(E);

5. Post a list of candidate withdrawals or vacancies in a conspicuous location within the voting location (if applicable), including a notice stating that any votes cast for the candidate will not be tabulated unless the withdrawal or vacancy was due to death or incapacity (however, for a Presidential Preference Election, the notice shall state that any votes cast for a candidate on the list will not be tabulated unless the candidate withdrew after ballots were printed or the withdrawal or vacancy was due to death or incapacity), A.R.S. § 16-343(F)-(G);[75]

6. Display the United States flag, A.R.S. § 16-512;

7. Arrange voting booths in view of the election board, A.R.S. § 16-562(A), and in a manner that provides an accessible path of travel for voters with disabilities (*see* ADA Checklist referenced in Chapter 5, Section III);

8. Arrange the signature roster, e-pollbook(s), or other check-in devices for convenient access;

9. Prepare ballot boxes:

---

[75] The notice must also be posted at all on-site early voting locations. *See* Chapter 2, Section II(A).

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

- Open and examine the ballot boxes to ensure the boxes are empty prior to voting, secure the ballot boxes; and arrange the ballot boxes in view of the election board. A.R.S. § 16-564(A).
- Confirm placement of the early ballot drop-off container (if separate boxes/containers are used);

10. Inventory the ballots received from the elections department, including ballot stock;

- If the officer in charge of elections determines it is not feasible to inventory ballot stock at the voting location, the officer in charge of elections must implement a reasonable alternative method to ensure accountability of ballot stock.

11. Set up tabulation equipment (if applicable) and accessible voting equipment near an electrical outlet in plain view of the election board and the voters;

- Ensure that electrical cords do not present a hazard to the board workers or voters;
- For the tabulation equipment, plug in the voting equipment and obtain a zero count following procedures in Chapter 4, Section I(D)(4); and
- Ensure that all tamper-resistant or tamper-evident seals are intact, contain the correct assigned number, and have not been tampered with; and

12. Establish the 75-foot limit by posting at least three "75-foot limit" signs:

- The signs must have the heading "75-foot limit" printed in letters at least 2 inches high;
- Have the following statement printed below the heading:

    "No person shall be allowed to remain inside these limits while the polls are open, except for the purpose of voting, and except the election officials, one representative at any one time of each political party represented on the ballot who has been appointed by the county chairperson of such political party, and the challengers allowed by law. Voters having cast their ballots shall at once retire without the seventy-five foot limit. A person violating any provision of this notice is guilty of a class 2 misdemeanor."

    A.R.S. § 16-515(B).

All signs and notices required under this Section must be printed in English and any other language required in the county under the Voting Rights Act.

## A. Instructions Posted at the Voting Location

### 1. Instructions to Voters and Election Officers

The "Instructions to Voters and Election Officers" notice must be displayed at the voting location, containing substantially the following information:

Page | 175

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

---

### Instructions to Voters and Election Officers

The polls are open from 6:00 a.m. until 7:00 p.m. Language assistance will be provided at certain polling locations. If you need language assistance, please inquire at your voting location.

Please give your full name, place of residence or mailing address, and identification documents to the election officer. The election officer will determine your correct ballot style and whether you will use a regular or provisional ballot to cast your vote.

Once you have received your ballot, go to the next available voting booth to cast your vote. Mark your ballot in the appropriate place next to the name of each candidate for whom you want to vote.

If you want to vote for a person who is an official write-in candidate, write that person's name on the lines provided and mark the ballot in the appropriate place next to the name you have written.

Ask for assistance if you need assistance marking your ballot or wish to utilize the accessible voting equipment. If you request assistance marking your paper ballot, two election officers from opposing political parties will accompany you to the voting booth. They will:

> Read you the names of all candidates for each office on the ballot;
> Read you the political parties by which the candidates were nominated for each office;
> Ask the name of the candidates for whom you want to cast your vote; and
> Mark your ballot correctly.

Neither of the election officers who assist you with your vote is allowed to influence your vote by recommending, explaining, or suggesting any candidate or political party for any office or issue.

If you accidentally spoil your ballot, present it to the election judge. Make sure to conceal any votes you have made on the ballot. Either you or the judge will need to mark the ballot as spoiled, and the judge will give you another ballot on which to cast your vote. You are allowed to use no more than three ballots. A person may only handle or return their own ballot or the ballot of family members, household members or persons for whom they are a caregiver. It is unlawful under section 16–1005 to handle or return the ballot of any other person.

If you believe that a violation of the Help America Vote Act of 2002 has occurred, you may contact:

Secretary of State's Division of Election Services
1700 West Washington Street 7th Floor
Phoenix, AZ 85007
1-877-THE VOTE
www.azsos.gov

A.R.S. § 16-513; A.R.S. § 16-563(1).

---

Page | 176

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

## B. Right to Vote a Provisional Ballot

The "Right to Vote a Provisional Ballot" notice must be displayed at the voting location, containing substantially the following information:

---

**Right to Vote a Provisional Ballot**

If you did not receive a regular ballot, you have a right to vote a provisional ballot if one of the following situations applies to you:

- Your name does not appear on the signature roster or e-pollbook, and you are in the correct polling place based on your current residence;
- You have moved to a new address within the county and have not updated your voter registration (if applicable);
- You have legally changed your name and have not updated your voter registration (if applicable);
- You requested an early ballot but did not vote an early ballot (if applicable);
- You have not produced sufficient identification; or
- You were challenged as a qualified voter.

To vote using a provisional ballot:

- Present identification to the poll worker and state your first and last name;
- Provide your complete residence address and mailing address (if different from your residence address) to the poll worker;
- Provide your signature next to your name after the election official enters your name on the signature roster or e-pollbook; and
- Sign an affirmation on the provisional ballot envelope stating that the information filled out on the provisional ballot envelope is correct, that you have resided in the precinct specified on the provisional ballot envelope at least 29 days before the election, that you are eligible to vote in this election, that you have not previously voted in this election, that your provisional ballot will only be counted if you voted in the correct precinct or on the correct ballot style (which is based on where you currently live), that you understand that voting the wrong ballot style in the wrong precinct means that your ballot will not be counted, and that you also understand that voting in the wrong county means that your ballot will not be counted.

Once you have voted using a provisional ballot, your ballot will be placed in a provisional ballot envelope, which you can seal. The poll worker will ensure that the envelope is sealed. You will then be given a provisional ballot receipt with information on how to present sufficient identification to the County Recorder (if necessary) and how to verify the status of your provisional ballot. Your vote will be counted upon verification of your eligibility to vote in the election.

---

A.R.S. § 16-513.01; A.R.S. § 16-563(1).

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

### C. Notice to Voters

Unless the same information is printed on the sample ballot, a "Notice to Voters" card or poster must be placed in each voting booth (in large, plain type), containing substantially the following information:

---

**Notice to Voters**

Section one of this ballot is comprised of partisan candidates. To vote for the candidates for the partisan offices, mark the ballot next to the name of the candidate for each partisan office for whom you wish to vote. If you wish to vote for a person whose name is not printed on the ballot, write such name in the blank space provided AND put a mark next to the name according to the instructions.

Section two of this ballot is comprised of nonpartisan candidates, potentially including judicial candidates, school district candidates and city/town candidates, and initiative or referendum propositions. To vote for the candidates for the nonpartisan offices, mark the ballot opposite the name of the candidate for each nonpartisan office for which you wish to vote. If you wish to vote for a person whose name is not printed on the ballot, write such name in the blank space provided AND put a mark next to the name according to the instructions. Mark the ballot by the word 'yes' (or 'for') for each proposition or question which you wish to be adopted. Mark the ballot by the word 'no' (or 'against') for each proposition or question which you wish not to be adopted.

When marking a paper ballot the voter shall do so by placing a mark next to the printed name in the designated location or in the square or circle next to the name written in.

---

A.R.S. § 16-514. Minor alterations have been made to the statutory language to account for modern ballot design. The second paragraph of the notice above may be omitted for a Presidential Preference Election because there is no nonpartisan section on the ballot.

#### 1.  Notice of Write-In and Withdrawn Candidates

A County Recorder must post a Notice of Write-In and Withdrawn Candidates at each voting location. A.R.S. § 16-312(E); A.R.S. § 16-343(G).

Information about write-in and withdrawn candidates also must be posted to the website of the County Recorder or officer in charge of elections. A.R.S. § 16-343(G).

#### 2.  Notice of Effect of Overriding Overvotes

If the voting equipment used for the election provides for the rejection of overvoted ballots or ballots that contain other irregularities, the Board of Supervisors shall provide for a written notice

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

advising the voter that if the voter chooses to override the overvoted office or measure or override any other ballot irregularity, the voter's vote for that office or measure will not be tallied. The notice shall be posted on or near the voting equipment so that the voter has a clear view of the notice. A.R.S. § 16-513(B).

## II.    OPENING THE VOTING LOCATION

The election board should arrive at the voting location no later than 5:30 a.m. on Election Day to promptly open the polls at 6:00 a.m.

Upon arrival at the polling place, members of the election board must take their oath of office, to be administered by a board member or another qualified elector of the precinct. A.R.S. § 16-534(C); A.R.S. § 38-231(E). If the county utilizes vote centers, the individual administering the oath need only be a qualified elector in the county.

If the voting location contains precinct voting equipment or accessible voting equipment that independently tabulates votes, the election board must generate a "zero report" from the voting equipment prior to opening the polls. The zero report is intended to confirm that the equipment contains no votes prior to commencement of voting.

To verify a zero report, the election board must:

- Ensure the tamper resistant seals or tamper evident seals are intact and do not show signs of tampering;

- Print a zero report from the equipment (the report must remain attached to the voting equipment and not removed until final results have been printed at the close of the polls);

- Verify the correct precinct number on the report (only in counties that conduct assigned polling place elections);

- Compare the zero report to the ballot and sample ballot to ensure the same names appear (only in counties that conduct assigned polling place elections);

- Confirm that no votes have been cast for any candidates or ballot measures;

- Have at least two board members of different political parties sign the zero report prior to opening the polls; and

- Make sure the digital readout on the front of the unit registers zero after the zero report is complete.

After verifying the zero report, the election board should look for a message indicating that the equipment is ready to accept ballots. If an error message is displayed instead, the election board should follow procedures specified by the officer in charge of elections, which may include calling for troubleshooting assistance.

The election board may be required to perform other necessary tasks prior to opening the voting location. At 6:00 a.m., the marshal must announce that the polls are open, and voters will be

Page | 179

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

allowed to enter the voting location. A.R.S. § 16-565. If a voting location that is located on tribal land does not open at 6:00 a.m., the county should notify the tribal government of the delay in opening.

| III. | PRESERVING ORDER AND SECURITY AT THE VOTING LOCATION |
|------|-------------------------------------------------------|

### A. Enforcing Electioneering Ban

No electioneering may take place within the 75-foot limit of a voting location. A.R.S. § 16-515(A). Additionally, no electioneering may take place outside the 75-foot limit if it is audible from a location inside the door to the voting location. The 75-foot limit is measured from the main outside entrance of the voting location.

"Electioneering" occurs when a person knowingly, intentionally, and verbally expresses support for, or opposition to, a candidate or ballot measure on the ballot in that election, or a political party with one or more candidates who appear on the ballot in that election, in order to induce or compel another person to vote in a particular manner or to refrain from voting. A.R.S. § 16-515(I).

The electioneering ban applies to the election board, other election officials, political party observers, and any voter or other individual within the 75-foot limit.

Though voters or voters' assistants are permitted to wear clothing with political messages, election board members, other election officials, or political party observers may not wear, carry, or display any materials that identify or express support or opposition for a political party, political organization, or a candidate or ballot measure appearing on the ballot. A.R.S. § 16-515(F).

The marshal, under the direction of the officer in charge of elections, enforces the electioneering ban on Election Day, while the County Recorder enforces the ban during in-person early voting and at ballot replacement sites. Law enforcement officials may be contacted to help enforce the ban in exceptional circumstances.

A County Recorder or other officer in charge of elections may grant emergency designations to polling places/vote centers, pursuant to which electioneering is not permitted on the property of the hosting facility, even outside the 75-foot limit. A.R.S. § 16-411(I); *see* Chapter 8, Section I(G).

### B. Enforcing Photography Ban

No photography or video recording is permitted within the 75-foot limit at a voting location. A.R.S. § 16-515(G). There is no exception for members of the media.

A voter, however, may display on the internet an image, that was not taken in a voting location, of their own ballot that was received by mail. A.R.S. § 16-1018(4).

CHAPTER 9:
Conduct of Elections/Election Day Operations
*Preserving Order and Security at the Voting Location*

(23 of 63), Page 23 of 63      Case: 24-6703, 01/06/2025, DktEntry: 7.5, Page 23 of 63
Case 2:24-cv-01673-MTL   Document 16-2   Filed 07/19/24   Page 195 of 386

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

## C. Enforcing Access Restrictions

A key component of preserving order at the voting location is ensuring that only authorized persons are present within the 75-foot limit. Only the following persons are authorized to be present within the 75-foot limit:

1. Members of the election board;

2. Election officials;

3. Voters (including minor children accompanying the voter, A.R.S. § 16-515(E));

   - Once in a voting booth, voters must vote promptly and move outside the 75-foot limit after voting. A.R.S. § 16-515(A); A.R.S. § 16-580(B)-(C).

4. A person selected by the voter to assist him or her voting (*see* Chapter 9, Section V);

5. Authorized political party observers (*see* Chapter 8, Section III); and

6. U.S. Department of Justice or other authorized federal government observers.

Unauthorized persons may not be present within the 75-foot limit, including but not limited to the following persons:

1. Members of the media;

2. Researchers;

3. Persons who conduct exit polls; or

4. Political party or campaign representatives without authorized political party observer status.

### 1. Simultaneous Activities Permitted at Voting Location

Regular business activity that normally occurs at the voting location may continue on Election Day, as long as the activity does not interfere with the voting process or result in electioneering. For example, a city clerk's office used as a voting location may require persons to cross or temporarily remain within the 75-foot limit in order to conduct city business. Additionally, Native American tribal election boards may be co-located with traditional election boards at the same voting location if a tribal election is held on the same day and time. A.R.S. § 16-515(D).

## D. Preventing Voter Intimidation

Any activity by a person with the intent or effect of threatening, harassing, intimidating, or coercing voters (or conspiring with others to do so) inside or outside the 75-foot limit at a voting location is prohibited. A.R.S. § 16-1013. The officer in charge of elections has a responsibility to train poll workers and establish policies to prevent and promptly remedy any instances of voter intimidation.

Page | 181

CHAPTER 9:
Conduct of Elections/Election Day Operations
*Preserving Order and Security at the Voting Location*
**ER-384**

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

The officer in charge of elections should publicize and/or implement the following guidelines as applicable:

- The inspector must utilize the marshal to preserve order and remove disruptive persons from the voting location. The inspector and/or marshal must use sound judgment to decide whether to contact law enforcement, and any higher-level decisions should be raised through the officer in charge of elections.

- Persons who witness problems at a voting location should not speak to or accost a voter in an attempt to "enforce" the law, but rather inform the inspector or marshal to allow them to resolve the issue.

- Private citizens are prohibited from bringing weapons into a polling place (including the 75-foot limit), even if the voter is properly licensed to carry such weapons. Openly carrying a firearm outside the 75-foot limit may also constitute unlawful voter intimidation, depending on the context. In order to keep voting locations safe and free of potential intimidation, therefore, observers at voting locations should leave weapons at home or in their vehicles. A.R.S. § 13-3102(A)(11) (exceptions apply for military and peace officers in the performance of official duties, *see* A.R.S. § 13-3102(C)).

In addition to the potentially intimidating conduct outlined above, the following may also be considered intimidating conduct inside or outside the polling place:

- Aggressive behavior, such as raising one's voice or taunting a voter or poll worker;

- Using threatening, insulting, or offensive language to a voter or poll worker;

- Blocking the entrance to a voting location;

- Disrupting voting lines;

- Following voters or poll workers coming to or leaving a voting location, including to or from their vehicles;

- Intentionally disseminating false or misleading information at a voting location, such as flyers or communications that misstate the date of the election, hours of operation for voting locations, addresses for voting locations, or similar efforts intended to disenfranchise voters;

- Impersonating a law enforcement officer or otherwise wearing clothing, uniforms or official-looking apparel intended to deter, intimidate, or harass voters (*see also* A.R.S. § 26-170, prohibiting unauthorized wearing of national guard or U.S. armed forces uniform);

- Directly confronting, questioning, photographing, or videotaping voters or poll workers in a harassing or intimidating manner, including when the voter or poll worker is coming to or leaving the polling location;

- Asking voters for "documentation" or other questions that only poll workers should perform;

Page | 182

CHAPTER 9:
Conduct of Elections/Election Day Operations
*Preserving Order and Security at the Voting Location*
**ER-385**

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

- Raising repeated frivolous voter challenges to poll workers without any good faith basis, or raising voter challenges based on race, ethnicity, national origin, language, religion or disability; or

- Posting signs or communicating messages about penalties for "voter fraud" in a harassing or intimidating manner.

*See* A.R.S. § 16-1013(A); A.R.S. § 16-1017.

| **IV.** | **CHECKING VOTER IDENTIFICATION** |
|---|---|

Voters are required to prove identity at the voting location before receiving a ballot on Election Day. A.R.S. § 16-579(A). The same requirements for proving identity also apply during in-person early voting, including at an on-site early voting location, emergency early voting center, or through personal early ballot delivery by a special election board. *See* Chapter 2, Section II(B).

Acceptable forms of identification fall into one of three categories:

- **List 1**: A valid form of photo identification with the voter's photograph, and name and address that reasonably match the name and address in the signature roster or e-pollbook;

- **List 2**: Two separate valid forms of non-photo identification with the voter's name and address that reasonably match the name and address in the signature roster or e-pollbook; or

- **List 3**: One valid form of identification with the voter's photograph and name, and address not reasonably matching the address in the signature roster or e-pollbook or a valid U.S. passport or military identification with the voter's name and photograph, *and* one valid form of non-photo identification from List 2.

A.R.S. § 16-579(A)(1)(a)-(c). Each list, as well as special rules applicable to Native American tribal members, is described in greater detail in the sections below.

The name and address on the identification must reasonably match the voter's name and residence or mailing address in the signature roster or e-pollbook in order to vote a regular ballot. Identification is deemed valid unless it can be determined on its face that it has expired. A.R.S. § 16-579(A)(1).

- The inclusion of an additional name on the voter's identification (*e.g.*, a middle name or an additional last name) not listed in the signature roster or e-pollbook does not prevent the voter from being issued a regular ballot.

- Voter identification that includes a nonstandard address should be found to reasonably match if the county has modified the residence address in the roster or e-pollbook and the city or town on the identification matches the city or town on the roster or e-pollbook.

- Voter identification that lists a mailing address, in lieu of a residence address, is acceptable. If the mailing address on the identification matches the mailing address on the roster or e-pollbook, there is a reasonable match and the voter must be issued a regular ballot.

CHAPTER 9:
Conduct of Elections/Election Day Operations
*Checking Voter Identification*

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

If the voter provides identification, but the name or address does not reasonably match the signature roster or e-pollbook, the voter should be issued a provisional ballot, not a conditional provisional ballot. *See* Chapter 9, Section VI(B)(1).

A voter who provides no proof of identity (or invalid proof of identity) must be issued a conditional provisional ballot. A.R.S. § 16-579(A)(2). In order for a conditional provisional ballot to count, the voter must present an acceptable form of identification to the County Recorder by 5:00 p.m. on the 5th business day following a primary, general, or special election that includes an election for a federal office, or by 5:00 p.m. on the 3rd business day following any other election. A.R.S. § 16-579(A)(2). For the purposes of determining the applicable deadline to provide identification: (i) the PPE is considered a federal election; and (ii) for counties that operate under a four-day workweek, only days on which the applicable county office is open for business are considered "business days."

If the voter identifies themself as a member of a recognized Native American tribe, the voter may present alternative proof of identity as outlined in Chapter 9, Section IV(B) below. A.R.S. § 16-579(A)(1). The officer in charge of elections must post a list of acceptable forms of identification in a conspicuous place (and make it available to voters upon request) at each voting location on Election Day.

## A. Acceptable Forms of Identification

### 1. List 1 – Photo ID with the Voter's Name and Address

Acceptable forms of identification with the voter's photograph, and name and address that reasonably match the voter's name and address in the signature roster or e-pollbook, include (only one required):

- A valid Arizona driver license;[76]
- A valid Arizona non-operating identification license;
- A tribal enrollment card or other form of tribal identification; or
- Any other valid United States federal, state, or local government-issued identification.[77]

A.R.S. § 16-579(A)(1)(a).

---

[76] Including a valid, AZMVD-issued Arizona Mobile ID. *See* https://azdot.gov/mvd/services/driver-services/mobile-id.

[77] While identification issued by a public college or university or other public educational institution qualifies as a state or local government-issued identification, it is not sufficient for voting purposes unless it includes the voter's photograph, name, and address as required by A.R.S. § 16-579(A)(1)(a).

Page | 184

**CHAPTER 9:**
**Conduct of Elections/Election Day Operations**
*Checking Voter Identification*

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

## 2. List 2 – Non-Photo ID with the Voter's Name and Address

A voter may present two separate documents that contain the voter's name and address. Acceptable forms of identification with the voter's name and address include the following:

- A utility bill for electric, gas, water, solid waste, sewer, telephone, cell phone, internet, or cable/satellite television service dated within 90 days of the election;

- A bank or credit union statement dated within 90 days of the election;

- A valid Arizona vehicle registration;

- A valid Indian or Native American census card;

- A property tax statement for the voter's residence;

- A valid tribal enrollment card or other valid form of tribal identification;

- A valid Arizona vehicle insurance card;

- A valid Recorder's Certificate;

- Any mailing marked "Official Election Material," including a valid Arizona voter registration card; or

- Any valid United States federal, state, or local government-issued identification.

A.R.S. § 16-579(A)(1)(b). Any List 2 document may be presented to a poll worker in electronic format, including on a smart phone or tablet.

## 3. List 3 – Acceptable Hybrid Forms of ID

The voter may present certain combinations of documents from Lists 1 and 2. Acceptable combinations include:

- A valid photo identification from List 1 with an address that does not reasonably match the voter's address in the signature roster or e-pollbook, accompanied by a document from List 2 with an address that does reasonably match the voter's address in the signature roster or e-pollbook;

- A valid U.S. Passport or passport card, accompanied by a document from List 2; or

- A valid U.S. Military identification, accompanied by a document from List 2.

A.R.S. § 16-579 (A)(1)(c).

### B. ID Requirements for Native American Voters

A voter who identifies himself as a member of a federally recognized Native American tribe and presents one item of tribal identification (that does not meet the requirements of List 1) must be issued a provisional ballot (in lieu of a conditional provisional ballot) and does not need to return

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

to confirm their identity. A.R.S. § 16-579(A)(1). A "tribe" includes a Native American nation, community, band, or tribal subdivision.

Acceptable forms of tribal identification include, but are not limited to, the following:

- A tribal identification card issued under the authority of the Bureau of Indian Affairs or a federally recognized Native American tribe;

- A tribal enrollment card issued under the authority of the Bureau of Indian Affairs or a federally recognized Native American tribe;

- A Certificate of Indian Blood issued under the authority of the Bureau of Indian Affairs or a federally recognized Native American tribe;

- A voter identification card issued under the authority of a federally recognized Native American tribe;

- A home site assignment lease, permit or allotment issued under the authority of the Bureau of Indian Affairs or a federally recognized Native American tribe; or

- A grazing permit or allotment issued under the authority of the Bureau of Indian Affairs or a federally recognized Native American tribe.

If the voter does not present an acceptable form of tribal identification and otherwise does not satisfy the identification requirements in A.R.S. § 16-579(A)(1) (*see* Chapter 9, Section IV(A) above), the voter must be issued a conditional provisional ballot. A.R.S. § 16-579(A)(2).

## V.  ASSISTING VOTERS ON ELECTION DAY

Voters may be accompanied within the 75-foot limit and assisted by a person of the voter's choice during any part of the voting process.[78] A voter may request assistance from a third-party (other than the voter's employer or union representative or a candidate appearing on the ballot[79]) or from members of the election board.

If a voter requests assistance from the election board, two members of the board (of different political parties) should perform the following steps, as applicable, all with the goal of providing the voter as much privacy and independence in the voting process as possible:

- Jointly accompany the voter into the voting booth or to the accessible voting equipment;

- If requested by the voter, audibly read the candidate's names for each office, including party designations and the number to elect;

---

[78] A voter with a disability may be accompanied by a service animal during any part of the voting process. A service animal is a dog that is individually trained to do work or perform tasks for a person with a disability. An animal whose sole function is to provide comfort or emotional support does not qualify as a service animal under the ADA. *See* U.S. Dept. of Justice, Civil Rights Division, Disability Rights Section, *ADA Requirements - Service Animals* (Feb. 24, 2020), available at https://www.ada.gov/service_animals_2010.htm.

[79] Candidates for precinct committeeman are permitted to provide voter assistance.

CHAPTER 9:
Conduct of Elections/Election Day Operations
*Assisting Voters on Election Day*

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

- If requested by the voter, audibly read the relevant information pertaining to any ballot measures;

- If needed to assist the voter, ask the voter what candidates and issues the voter desires to vote for;

- If requested by the voter, instruct the voter how to operate any accessible voting equipment, including what to expect for the recorded instructions and what keys to use to move forward or go back on the screen;

- If requested by the voter, assist the voter in marking or verifying the voter's ballot selections; and

- If needed to assist the voter, ask the voter what candidates and issues the voter desires to vote for.

Those assisting a voter upon the voter's request may not attempt to influence a voter in the choice of candidates or issues, nor in any manner suggest or recommend a vote for any particular candidate or issue. *See* Chapter 9, Section I(A)(1) above. When assisting voters, poll workers should also remember to speak only as loudly as needed to assist the voter and protect their privacy as much as possible.

Curbside voting may also be provided to senior citizens or voters with disabilities as a reasonable accommodation or when the officer in charge of elections determines that a voting location is inaccessible, that no accessible sites are available, and that no temporary measures can make it accessible. *See* Chapter 5, Sections III and IV.

## VI. ISSUING BALLOTS

### A. Issuing a Regular Ballot

Upon checking in at a voting location, voters must announce their name and address or provide their name and residence or mailing address in writing (by presenting proof of identity). A.R.S. § 16-579(A).

In jurisdictions that conduct assigned polling place elections, the residence address must be within the precinct in which the voter is attempting to vote. By signing the signature roster or the e-pollbook signature pad, they are deemed to affirm that they are registered in that jurisdiction and is eligible to vote in that jurisdiction. A.R.S. § 16-584(C). If the voter is found in the signature roster or e-pollbook, has presented acceptable proof of identity, and does not fall into an exception listed in Chapter 9, Section VI(B)(1) below, the voter must be issued a regular ballot. *See* A.R.S. § 16-579(C).

Each voter must sign their name in the signature roster or e-pollbook signature pad prior to receiving a ballot. Alternatively, an inspector or judge may sign the roster or e-pollbook for a voter who is personally unable to sign due to physical disability. In jurisdictions that use a paper signature roster, the inspector or judge must write the voter's name with red ink. A.R.S. § 16-

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

579(D). In jurisdictions that use an e-pollbook, the inspector or judge must write the voter's name and the inspector's or judge's initials (on the e-pollbook signature pad) as an attestation. A.R.S. § 16-579(E).

A voter at a special district election for which no signature roster has been supplied may vote a regular ballot, but must provide the voter's name and address in an affidavit and affirm therein that the voter:

- Resides within the district boundaries or proposed district boundaries;
- Is a qualified elector for the election; and
- Has not already voted at the election.

A.R.S. § 16-579(F).

### B. Issuing a Provisional Ballot

#### 1. Circumstances Requiring Issuance of a Provisional Ballot

##### a. *Voter Received an Early Ballot*

A voter must be allowed to vote a provisional ballot if the voter appears on the signature roster or e-pollbook as having received an early ballot-by-mail, but either: (1) affirms that they have not voted and will not vote the ballot-by-mail; or (2) surrenders the ballot-by-mail to the inspector on Election Day. A.R.S. § 16-579(B).

Voters who appear at a voting location with a ballot-by-mail that has not been voted, along with the affidavit envelope, may use a privacy booth at the voting location to mark the ballot-by-mail. In this circumstance, the voter does not sign in at the voting location and the voter must place the voted ballot-by-mail in its affidavit envelope, sign the affidavit envelope, and place the envelope in the early ballot drop-off container at the voting location.

##### b. *Name Does Not Appear on Signature Roster*

A voter whose name does not appear on the signature roster must be issued a provisional ballot if the voter:

- Presents identification that includes their name and a residential address or location that the clerk verifies to be within the precinct (in counties that conduct assigned polling place elections) or county (in counties that use vote centers); or
- Signs an affirmation that states the voter is registered and eligible to vote in that jurisdiction.

A.R.S. § 16-584(B).

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

### i. Recorder's Certificate

A voter whose name does not appear on the signature roster, but who presents a certificate from the County Recorder showing that the voter is entitled to vote at the voting location, is entitled to vote a regular ballot. In a jurisdiction that uses a paper signature roster, the voter must sign on the first available blank line on the signature roster. A.R.S. § 16-584(A).

### c. *Voter Has an Inactive Status*

If a voter whose registration record is in inactive status and the voter has a new residential address or location in a different precinct, the voter must be directed to the correct voting location (in counties that conduct assigned polling place elections). In this case, the voter must also be informed that although the voter has a right to vote a provisional ballot at that location, the voter must vote in the correct polling place that corresponds to the voter's current address in order for the vote to count.

If a voter affirms they continue to reside at the address on the signature roster or in the e-pollbook, the voter must be issued a regular ballot and the County Recorder must place the voter's registration record in active status following the election. A.R.S. § 16-583(A)-(B).

### d. *Voter Changed Their Name*

If a voter's current name does not appear in the signature roster or e-pollbook because the voter changed their name, the voter must be issued a provisional ballot or conditional provisional ballot. In that case, the clerk must write the voter's new name and former name on the provisional ballot envelope. The provisional ballot envelope will be used by the County Recorder after the election to change the voter's name in the voter registration database.

However, if the election board has real-time access to voter registration records, the voter's information may be updated at the voting location upon completion of a new voter registration or address update form.

### e. *Voter Moved Within the County*

If a voter moved to a new address within the county but did not update their address with the County Recorder before the election, the voter must vote a provisional ballot and (in counties that conduct assigned polling place elections) must vote at the polling place that corresponds to their new address. A.R.S. § 16-584(C). If the voter is at a polling place that does not correspond to their new address, follow the procedures in Section (f) below for out-of-precinct voters.

At the new polling place, the voter will be permitted (via the provisional ballot envelope) to update their voter registration record with the new address. A.R.S. § 16-584(C). In a jurisdiction that utilizes vote centers, the voter may update their address in the same manner but may vote at any vote center within the jurisdiction.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

If the election board has real-time access to voter registration records, the voter's information may be updated at the voting location upon completion of a new voter registration form or address update form.[80]

### f.  *Out-of-Precinct Voter*

If the voter's name does not appear on that precinct's signature roster because the voter resides in another precinct (in counties that conduct assigned polling place elections), an election official shall:

- Permit the voter to vote a provisional ballot (in the correct ballot style for the voter's assigned precinct) using an accessible voting device that is programmed to contain all ballot styles, and inform the voter that their provisional ballot will be counted after it is processed and if it is confirmed the voter is otherwise eligible to vote and did not vote early or at another voting location and had that other ballot counted.

  o  Alternatively, upon a specific resolution of the Board of Supervisors issued pursuant to A.R.S. § 16-411(B)(4) authorizing the use of accessible voting equipment within an assigned polling place to be used as a vote center, a voter shall be entitled to vote a regular ballot using the accessible voting device if:

    ▪ The election board has access to real time information and can confirm the qualified voter has not cast a ballot at another voting location;

    ▪ The accessible voting device is pre-programmed and certified to allow voters to mark or vote any ballot style for that county; and

    ▪ The accessible voting device enables the voter to vote/mark a ballot for the correct precinct in which the voter is entitled to vote.

- If the voter refuses the option to vote on the accessible voting device as described above, the election official shall direct the voter to the correct polling location or, if applicable, to a vote center.

- If the voter refuses the option to vote on the accessible voting device and refuses to go to the correct polling location (i.e., the voter insists on voting a paper ballot in the wrong ballot style for the voter's assigned precinct),  the election official must inform the voter that the voter must vote the correct ballot style, either using the accessible voting machine or in the correct polling place, in order for their votes to be counted.

The out-of-precinct procedures described above apply to voters who are in the right county, but the wrong precinct. Voters who attempt to cast a ballot in the wrong county (i.e., outside their county of registration) should be informed that ballots cast in the wrong county will not be counted.

---

[80] If a registrant moved to a different county during the 29-day period preceding the next election, the registrant is deemed a resident of and remains a qualified elector in the former county for that election and must vote in the *former* county. A.R.S. § 16-125.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

### g. *Procedures for Issuing Provisional Ballots*

A voter who is issued a provisional ballot must sign their name on a separate signature roster page beginning with the number V-1 and numbered consecutively (for paper signature rosters only). A.R.S. § 16-584(E). E-pollbooks must be able to produce a report of provisional voters, including the voter's signature, after the polls close.

The voter and election board member must complete the information required on the provisional ballot envelope. The voter then must:

- Take the completed envelope and provisional ballot to the voting booth;
- Vote the provisional ballot;
- Place the voted ballot inside the provisional ballot envelope and seal the envelope; and
- Provide the sealed provisional ballot envelope to the election board member.

Upon receipt of the provisional ballot envelope, the voter, or the poll worker upon the voter's request, must deposit the provisional ballot envelope in the provisional ballot box (and ensure the ballot is not inserted into any precinct tabulation equipment). A.R.S. § 16-584(D). The voter shall be provided with a receipt or number with which to electronically verify the status of their provisional ballot.

All voters shall have the option of voting a provisional ballot on an accessible voting device.

### h. *Issuing Provisional Ballots to Secured Registrants*

In the event a secured registrant attempts to vote provisionally at a polling place (and informs the poll worker of his/her secured status), the poll worker shall undertake additional precautions, including but not limited to:

- Confirming the correct ballot style;
- Ensuring that a protected government official or protected victim lists their actual residential address on the provisional ballot envelope;
- Making a notation about secured registrant status on the provisional ballot envelope; and/or
- Limiting the signature roster to the registrant's voter ID number and the notation "address protected."

### i. *Issuing Conditional Provisional Ballots*

If the voter does not provide acceptable proof of identity, *see* Chapter 9, Section IV above, the voter must be issued a conditional provisional ballot. A.R.S. § 16-579(A)(2).

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

The process for voting the ballot, completing the ballot envelope, and sealing the voted ballot in an envelope is the same procedure applicable to provisional ballots. *See* Chapter 9, Section VI(B)(2) above. However, for a conditional provisional ballot, the election board member must:

1. Indicate on the ballot envelope that the voter did not provide acceptable identification;

2. Deposit the sealed envelope in the conditional provisional ballot box or other appropriate ballot box (or allow the voter to do so);

3. Shall provide a receipt that:

    • Informs the voter how and where the voter may provide the required identification; and

    • Informs the voter that they must provide proof of identity to the County Recorder by 5:00 p.m. on:

        - The 5th business day following a primary, general, or special election that includes an election for a federal office; or

        - The 3rd business day following any other election.

A.R.S. § 16-579(A)(2).

### j.   *Ballot Privacy Folders/Sleeves*

The election judge at the voting location shall give each qualified elector only one ballot (regular or provisional, depending on the circumstances) along with a ballot privacy folder or sleeve. However, no voter shall be required to accept or use a privacy ballot folder or sleeve. A.R.S. § 16-579(C).

## VII.   ON-SITE EARLY BALLOT TABULATION

Each County Recorder or other officer in charge of elections may provide an option for voters to have their voted early ballot tabulated if the voter appears at the designated polling location or vote center on Election Day with their voted early ballot and presents proper identification. A.R.S. § 16-579.01(A); A.R.S. § 16-579.02(A). If the county permits on-site tabulation of early ballots, the County Recorder or other officer in charge of elections must do all of the following:

a) Designate an area for processing electors with their voted early ballots that is physically separate from the area for voters who are voting on Election Day within a precinct or vote center;

b) Provide adequate election officials, equipment, and poll workers necessary to conduct voting on Election Day and Election Day early ballot on-site tabulation;

c) Tally by precinct and categorize separately in the official canvass and other reports the voters whose voted early ballots are tabulated at the vote center or precinct; and

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

d) Reconcile the number of voters who appear on the signature roster or e-pollbook at a polling place or vote center with the number of completed early ballot affidavits and the voted early ballots tabulated on site.

A.R.S. § 16-579.01(B).

A voter with their voted early ballot who appears at a designated polling place or a vote center that allows for the on-site tabulation of early ballots shall present identification as prescribed in Chapter 9, Section IV. A.R.S. § 16-579.02(A). The voter shall then proceed as follows:

a) If the voter does not present identification, the voter must either deposit the voted early ballot in its affidavit envelope in an official drop box, or the voter shall proceed to the Election Day area designated for voting to surrender their early ballot to the election board for retention and not for tabulating. The voter is then allowed to vote a conditional provisional ballot.

b) If the voter presents identification, the voter must provide the early ballot affidavit to the election official in charge of the signature roster who must then confirm that the name and address on the completed affidavit reasonably appear to be the same as on the precinct register or e-pollbook; and

c) The election official in charge of the signature roster must allow the voter to complete the affidavit (if not complete) and may not allow for the on-site tabulation of an early ballot until the voter presents a completed early ballot affidavit.

After checking the voter's identification and ensuring the early ballot affidavit is complete, the clerk shall number consecutively the voter's completed affidavit in the order of application for early ballot tabulation, and the voter shall sign their name in the signature roster before proceeding to the tabulating equipment. A.R.S. § 16-579.02(B)-(D).

While at the tabulating equipment and under the observation of an election official, the voter shall:

a) Remove the early ballot from the completed affidavit envelope;

b) Deposit the empty completed affidavit envelope in the drop box; and

c) Insert the early ballot into a tabulating machine.

A.R.S. § 16-579.02(E).

The prescribed drop box for voted early ballot affidavits must be clearly labeled to indicate that the completed affidavits are from tabulated early ballots and must be secured in a similar manner to other ballot boxes at that location. A.R.S. § 16-579.02(F).

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

A voter who lawfully brings another person's voted early ballot that is sealed in its affidavit envelope shall deposit the other person's voted early ballot in the appropriate ballot drop box before entering the on-site early ballot tabulation area in order to tabulate the voter's own early ballot. A.R.S. § 16-579.02(G).

| VIII. | CHALLENGES TO A VOTER'S ELIGIBILITY TO VOTE |
|---|---|

A qualified elector in the county may, at the voting location, orally challenge a voter's eligibility. The elector challenging a voter's eligibility must show, by clear and convincing evidence, that:

1. The voter has voted before at that election, A.R.S. § 16-591;

2. The voter is not the person whose name appears in the signature roster or e-pollbook, A.R.S. § 16-121.01(B)(1);

3. The voter has not resided in Arizona (or the relevant local jurisdiction) for at least 29 days before the election, A.R.S. § 16-121.01(B)(2);

4. The voter is registered at an address that is not permitted for registration purposes, A.R.S. § 16-121.01(B)(3); or

5. The voter is not otherwise a qualified elector, for example, the voter does not live within the proper electoral district or is not at least 18 years old. A.R.S. § 16-121.01(B)(4); A.R.S. § 16-101(A).

A.R.S. § 16-121.01(B). A person is presumed to be properly registered to vote on completion of a registration form as prescribed by A.R.S. § 16-152 that contains the minimum required information. The burden of proof is on the challenger to show by clear and convincing evidence why the voter is not eligible to vote. *See* A.R.S. § 16-121.01(A)-(B).[81] Clear and convincing evidence is a heightened standard of proof that requires more than the preponderance of the evidence standard used in civil proceedings. To meet this heightened standard, the challenger must prove sufficient, individualized facts to establish that a conclusion is highly probable or reasonably certain.[82]

A challenge that does not articulate a statutorily-authorized ground for the challenge may be summarily dismissed. For example, a voter may not be challenged at the voting location on the following invalid grounds:[83]

- The voter's race, national origin, appearance, surname, language, or religion.

---

[81] The challenge to the voter's eligibility must rebut, with individualized evidence, the presumption under Arizona law that a vote and active voter registration is valid.

[82] *See Parker v. City of Tucson*, 233 Ariz. 422 (App. 2013) (defining "clear and convincing evidence"); *Kent K. v. Bobby M.*, 210 Ariz. 279 (2005) (same).

[83] Challengers initiating frivolous challenges or repeated challenges based on invalid grounds is justification for removing the challenger from the voting location to prevent harassment and intimidation of voters.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

- The voter registered to vote using the State or Federal Form and did not provide proof of citizenship.

- The voter moved from one address within the county to another within the county.

- For reasons such as military service or college attendance, the voter is temporarily staying away from the residence at which they are registered to vote but has the intention of returning to that residence.

Challenges that articulate a statutorily-authorized ground must be decided at the voting location by the inspector and two judges. The inspector should have the challenged voter step aside and permit the other voters in line to continue to vote while the challenge is being determined.

If requested by the challenged voter, and before administering any oath, the inspector must read to the voter the rules for determining residency, including the following information:

1. The residence of a person is that place in which their habitation is fixed and to which they have the intention of returning.

2. A person does not gain or lose their residence by reason of their presence at, or absence from, a place while employed in the service of the United States or of this state, or while engaged in overseas navigation, or while a student at an institution of learning, or while kept in prison or mental institution.

3. A person does not lose their residence by traveling to another county, state, or foreign country for temporary purposes, with the intention of returning.

4. A person does not gain a residence in any county they travel to for temporary purposes, without the intention of making that county their home.

5. If a person moves to another state with the intention of making it their residence, they lose residency in this state.

6. If a person moves to another state with the intention of making it their current residence and remaining there for an indefinite time, the person loses residency in this state even though they have an intention of returning at some future period.

7. The place where a person's family permanently resides is their residence (unless separated from their family) but is not their residence if it serves as a temporary location or is used for transient purposes.

8. If a person has a family residing in one place and the person does business in another, the family residence constitutes the person's place of residence. However, a person who has taken up a residence apart from their family with the intention of remaining in that separate residence shall be regarded as a resident where the person resides.

9. A United States citizen who has never resided in the United States is eligible to vote in this state by using a federal write-in early ballot if both of the following apply:

   - A parent is a United States citizen.

   - The parent is registered to vote in this state.

CHAPTER 9:
Conduct of Elections/Election Day Operations
*Challenges to a Voter's Eligibility to Vote*

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

10. The mere intention of acquiring a new residence without leaving the state or leaving the state without the intent to permanently do so, does not cause a loss of residency.

A.R.S. § 16-593(A); A.R.S. § 16-593(C). Board members should consult above residency requirements when determining registration validity.

If the challenged voter appears to be registered, the challenged voter must orally take the oath prescribed in the State Form: "I swear or affirm that the information in my voter registration is true, that I am a resident of Arizona, I have not been convicted of a felony or my civil rights have been restored, and I have not been adjudicated incapacitated with my voting rights revoked." A.R.S. § 16-592(A).

The challenged voter also may choose to answer questions material to the challenge, under oath. Only the inspector may address questions to the challenged voter. A.R.S. § 16-592(A). The person making the challenge may not speak to the challenged voter in a manner that harasses or intimidates the voter.

If a majority of the board finds the challenge to be invalid, the voter must be permitted to vote a regular ballot, so long as the voter is otherwise eligible to do so. A.R.S. § 16-592(B).

If the person challenged refuses to take any oath, refuses to answer questions material to the challenge, or if a majority of the board finds that the challenge is valid, the challenged voter must be permitted to vote a provisional ballot. A.R.S. § 16-592(C).

In the case of any challenge, the election board must complete the Official Challenge List and may seek guidance from the officer in charge of the election.

## IX.    CLOSING THE VOTING LOCATION

### A. Announcing the Closing of the Polls

The polls close at 7:00 p.m. on Election Day. A.R.S. § 16-565(A). The marshal must announce the closing of the polls and make the following additional public announcements (inside the voting location and to any voters waiting in line) at the specified time intervals:

- 1 hour before the closing of the polls;

- 30 minutes before the closing of the polls;

- 15 minutes before the closing of the polls;

- 1 minute before the closing of the polls; and

- At the moment of closing at 7:00 p.m.

A.R.S. § 16-565(C). The marshal must allow everyone to vote who is physically in line at the moment of closing the polls. The marshal may use any reasonable system to document or keep

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

track of which voters were in line as of 7:00 p.m., for example, by standing in line behind the last person to arrive as of the closing of the polls and telling those who arrive later that the polls are closed. Voters who arrive in line after 7:00 p.m. on Election Day are not permitted to vote. A.R.S. § 16-565(D).

### B. Election Board Close-Out Duties

Upon closing the voting location after the last voter has voted on Election Day, poll workers should perform close-out duties as assigned by the officer in charge of elections, including the following duties as applicable:

1. Using the procedures specified by the officer in charge of elections, poll workers must conduct an audit to ensure that the number of voters who signed in on the signature roster or e-pollbook matches the number of ballots cast, including regular and provisional ballots and, if the accessible voting equipment independently tabulates votes, any votes cast on the accessible voting equipment, A.R.S. § 16-602(A).

   a. If ballots are tabulated at the voting location: a printed statement of tally or summary of all vote totals shall be printed from every tabulation machine, and the number of ballots cast shall be compared to the signature roster and/or e-pollbook list and provided with the Official Ballot Report, A.R.S. § 16-607.

2. The information from this audit must be recorded on an Official Ballot Report form, as provided by the officer in charge of elections, which must include:

   a. The total number of blank (i.e., unvoted) printed ballots or estimated number of blank ballot stock received from the officer in charge of elections;

   b. The number of voters who signed in on the signature roster, poll list, or e-pollbook and are indicated as having been issued regular ballots;

   c. The number of voters who signed in on the signature roster, poll list, or e-pollbook and are indicated as having been issued provisional and conditional provisional ballots;

   d. The number of regular ballots cast as determined by the election board's manual count if tabulation is not done at the voting location, or as reflected on the printed summary tape from the tabulation machine if tabulation is done at the voting location;

   e. The number of provisional and conditional provisional ballots voted and sealed in provisional ballot envelopes, as determined by the election board's manual count of sealed provisional ballot envelopes;

   f. The number of unused blank ballots/ballot stock, spoiled ballots, misread ballots that still need to be tabulated (if tabulation is done at the voting location), and write-in ballots (if applicable);

   g. The number of early ballots received by the voting location (unless ballots are transported in a secure and sealed transport container to the central counting place to be counted there);

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

h.  In counties that use accessible voting units that independently tabulate, the number of regular and provisional ballots cast on the unit, and the unit's beginning and ending counts (if applicable); and

i.  The Official Ballot Report must be signed by the inspector and both judges, and if there are any discrepancies in the report, an explanation for the discrepancy should be attached or otherwise provided with the Official Ballot Report. The Audit Board will use this information for post-election procedures (*see* Chapter 10, Section II(H)).

3.  Secure the ballot boxes with tamper-resistant or tamper-evident numbered seals, A.R.S. § 16-608(A);

4.  Remove all memory cards or electronic media needed for election night reporting from voting equipment and e-pollbooks (if applicable) and lock and/or seal any ports or compartments where memory cards or electronic media had been inserted;

5.  Power down any voting equipment and prepare the equipment for transport/pick-up;

6.  Collect all supplies required to be returned to the elections department;

7.  Sign the Certificate of Performance for the signature roster or the functional equivalent for the e-pollbook;

8.  Prepare the official returns envelopes/containers and, if applicable, unofficial returns envelopes/containers, including the following items, for transport to the central counting place or other receiving site:

    a.  Official and unofficial returns envelopes/containers shall be plainly marked to identify items to be placed within each envelope/container:

        •  The official returns envelope/container shall be securely sealed with a tamper-evident, secure label signed by the inspector and both judges and should include, as applicable:

            -  Spoiled ballots, including any spoiled early ballots, A.R.S. § 16-585;

            -  One copy of the poll list (if the county uses paper signature rosters) or poll list produced by the e-pollbook; and

            -  Affidavits of challenged voters, decisions of election officials, and challenge lists, A.R.S. § 16-594;

        •  The unofficial returns envelope/container shall be returned with the official returns envelope/container and shall be made available for inspection by electors for a period of six months following the election. The unofficial returns envelope/container shall include the following, as applicable:

            -  A copy of the paper signature roster and poll list (if e-pollbooks are used, the e-pollbook list must be captured (*e.g.*, on memory sticks or electronic media, or exported from the e-pollbooks) and retained);

            -  Payroll voucher envelope, if applicable, with the Official Ballot Report or duplicate thereof; and

**CHAPTER 9:**
**Conduct of Elections/Election Day Operations**
*Closing the Voting Location*

**ER-401**

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

-    Any other items as directed by the officer in charge of elections;

b.   Voted ballots, including voted provisional and conditional provisional ballots, (with a report of the number of voters who have voted) sealed in a container with a tamper resistant or tamper-evident numbered seal, A.R.S. § 16-608(A));

c.   Unvoted ballots (in a sealed container, A.R.S. § 16-566(B));

d.   The original Official Ballot Report (if not included in the unofficial returns envelope/container);

e.   Tally lists, if ballots are tabulated at the voting location (enclosed in a secure envelope which is sealed and signed by the members of the board (inspector and both judges) and attested by the clerks), A.R.S. § 16-614;

f.   The original signature rosters/poll lists, if applicable (enclosed in a secure envelope, sealed and signed by the inspector and judges), A.R.S. § 16-615(A));

g.   E-pollbooks (if the signature roster information remains in the e-pollbook and has not been extracted by removing memory cards or electronic media or otherwise securely synced with the central server);

h.   Memory sticks or electronic media (securely sealed in a transport container for that purpose); and

i.   Any voting equipment that independently tabulates (if memory sticks or electronic media have not been removed).

9.   Exit and lock the voting location.

10.  All election night returns must be delivered to the designated receiving site and a receiving board log of the transmissions should be kept by the receiving board which will later be provided to the officer in charge of elections.

## C. Transport of Ballots, Voting Equipment, and Supplies

Following the close of voting on Election Day, an accounting, reconciliation, and chain of custody record for voted ballots must be created and the transport of any ballots, voting equipment, and necessary voting location supplies to the central counting place or other authorized receiving site must be documented and done by: (1) two authorized election workers, who must be members of different political parties; or (2) if extenuating circumstances exist, a sworn official election messenger, such as a sheriff's deputy, appointed in accordance with A.R.S. § 16-615(B).

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

# CHAPTER 13:
## CERTIFYING ELECTION RESULTS

### I.        DETERMINING ELECTION RESULTS

In a partisan primary election:

- The candidate who receives the largest number of votes must be declared the party nominee for that office and issued a certificate of nomination by the Board of Supervisors (or designee).

  - If more than one candidate may be nominated, the candidates who receive the largest number of votes will be declared nominees and issued certificates of nomination in accordance with the number to be nominated. Nomination entitles the candidate to be placed on the general election ballot.

  A.R.S. § 16-645.

- In order for a write-in candidate to become the nominee of a party with continued representation on the ballot, the candidate:

  - Must receive the largest number of votes; and

  - Must receive at least as many votes as the number of nomination petition signatures required to appear on the primary election ballot for that office.

At the general election:

- Unless otherwise specified in law, the candidate who receives the largest number of votes must be declared elected to that office and issued a certificate of election by the Board of Supervisors (or designee), A.R.S. § 16-647; A.R.S. § 16-650; and

- A ballot measure that is approved by a majority of votes cast for the measure will be declared to be law, Ariz. Const. Art. IV, Pt. 1, § 1(13).

  - If two or more conflicting measures (in whole or in part) are approved by voters at the same election, the measure with the most votes will prevail with respect to any provisions that are in conflict. Ariz. Const. Art. IV, Pt. 1, § 1(12).

  - Upon completion of the canvass by the Secretary of State, the Governor will issue a proclamation of the votes cast for and against any constitutional amendments, initiatives and referenda, and declare those approved by a majority to be law. A.R.S. § 16-651.

A.R.S. § 16-649 specifies the result of the election in the event of a tie.

Page | 246

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

## II.    CANVASSING THE ELECTION

The governing body conducting an election must meet in public and canvass the election results of each precinct or election district. The purpose of the canvass is to officially certify the election. The canvass includes vote totals for all races tabulated by voting equipment (including early ballots, regular ballots, and provisional ballots) and write-in votes.

A canvass must be conducted by the statutory deadline but should not be conducted until all necessary audits by the Audit Board have been completed to verify the accuracy and integrity of the election results. *See* Chapter 10, Section II(I).

### A.  County Board of Supervisors Canvassing Duties

A Board of Supervisors must canvass the official election results in a public meeting. The official election results must include the following information:

1. A Statement of Votes Cast, which includes:

   a. The number of ballots cast in each precinct and in the county;

   b. The number of ballots rejected in each precinct and in the county;

   c. The titles of the offices up for election and the names of the persons (along with the party designation, if any, of each person) running to fill those offices;

   d. The number of votes for each candidate by precinct and in the county;

   e. The number and a brief title of each ballot measure; and

   f. The number of votes for and against each ballot measure by precinct and in the county.

   A.R.S. § 16-646.

2. A cumulative Official Final Report, which includes:

   a. The total number of precincts;

   b. The total number of ballots cast;

   c. The total number of registered voters eligible for the election;

   d. The number of votes for each candidate by district or division, including a designation showing which candidate received the highest number of votes;

      i. In a PPE, the number of votes for each candidate by congressional district;

      ii. In a primary election, the report must contain the party designation for each office; whereas in a general election, the report must contain the party designation for each candidate;

   e. The number of votes for and against each ballot measure by district, including a designation of which choice received the highest number of votes; and

Page | 247

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

   f.  The total number of votes in each district or division.

3.  A Write-In Votes Report, which includes the name and number of votes for each authorized write-in candidate by precinct (if not already included in the reports above).

## 1. Deadline to Canvass Results

The Board of Supervisors should canvass the election results only after all necessary audits have been performed and any discrepancies have been addressed by the County Recorder or other officer in charge of elections.

Assuming all prerequisites have been met, the Board of Supervisors must canvass the election by the required deadline, which varies by type of election.

- For primary elections and PPEs, the Board of Supervisors must canvass the results within 14 days after the election. A.R.S. § 16-241(C); A.R.S. § 16-645(B).

- For all other elections held on a consolidated election date (including general elections), the Board of Supervisors must canvass between six and 20 days after the election. A.R.S. § 16-642(A).

- For special elections, the Board of Supervisors must canvass the election according to the deadline established in the order calling the election.

## 2. Scope of Duty to Canvass

The Board of Supervisors may postpone the canvass on a day-to-day basis if the results from any precinct are missing. If precinct results are still missing after six postponements, the Board of Supervisors must canvass the remaining election results. A.R.S. § 16-642(C).

The Board of Supervisors has a non-discretionary duty to canvass the returns as provided by the County Recorder or other officer in charge of elections and has no authority to change vote totals, reject the election results, or delay certifying the results without express statutory authority or a court order.

## 3. Preserving and Transmitting Canvass Results

Once the Board of Supervisors has certified the election results, the Official Final Report and Statement of Votes Cast from the canvass must be published on the website of the officer in charge of elections. An original signed canvass should be preserved as a permanent record by the Board of Supervisors.

For any elections that include a federal, statewide, or legislative office, or a statewide ballot measure, the Board of Supervisors or officer in charge of elections must transmit the official canvass to the Secretary of State (in an electronic format determined by the Secretary of State) within the applicable statutory deadline. A.R.S. § 16-645(B). In addition, a certified copy must be promptly mailed to the Secretary of State to be preserved as a permanent record.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

If the county conducted an election on behalf of a local jurisdiction, the Board of Supervisors or officer in charge of elections should promptly transmit a copy of the official canvass to those jurisdictions as well.

### 4. Post-Canvass Reports

#### a. *Provisional Ballot Report*

The County Recorder or other officer in charge of elections must submit a provisional ballot report to the Secretary of State with the primary and general election canvasses. The Secretary of State may require the counties to use a uniform electronic media format provided by the Secretary of State for the report. The report must contain the following information about provisional ballots cast at that election:

1. The number of voters in each precinct;

2. The number of provisional ballots cast in each precinct;

3. The number of provisional ballots verified/counted in each precinct;

4. The number of provisional ballots not verified/counted in each precinct, along with the reason for not doing so;

5. The number of conditional provisional ballots cast in each precinct;

6. The number of conditional provisional ballots verified/counted in each precinct; and

7. Whether the uniform procedures were followed for determining whether a provisional ballot is counted or not counted.

#### b. *Accessibility Report*

The County Recorder or other officer in charge of elections must submit an accessibility report (which includes information for both the primary and general election) to the Secretary of State on or before December 31 of the general election year. The Secretary of State may require the counties to use a uniform electronic media format provided by the Secretary of State for the report. The report must contain the following information about the recently conducted elections:

1. The number of early voting and Election Day voting locations in the county;

2. The number of early voting and Election Day voting locations that were fully handicap-accessible under the Americans with Disabilities Act (ADA);

3. The number of early voting and Election Day voting locations that were not fully handicap-accessible under the ADA. If some locations were not fully handicap-accessible, the report must identify:

   • The address or description of the voting location;

   • The number of voters registered in the precinct(s) in question (if the county conducts polling place-assigned elections); and

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

- The number of ballots cast at the voting location;

4. If some locations were not fully handicap-accessible prior to use during the early voting period or on Election Day, the efforts undertaken prior to the election to either make the voting location fully accessible or identify an alternative location that was fully accessible;

5. The measures being undertaken to bring inaccessible voting locations into compliance or to replace inaccessible voting locations with accessible locations;

6. The alternative language accessibility provided for ballots, publicity pamphlets, voter registration forms and voter education materials, if applicable; and

7. If the jurisdiction is covered under Section 203 of the Voting Rights Act, a summary of the steps taken to provide language assistance to voters, including appointment of bilingual poll workers, access to on-site or remote interpretation services, and the availability of an Election Terminology Glossary in the covered language(s).

### c. *Voter Education Report*

The County Recorder, Board of Supervisors, or other officer in charge of elections must submit a voter education report (which includes information for both the primary and general election) to the Secretary of State on or before December 31 of the general election year. The Secretary of State may require the counties to use a uniform electronic media format provided by the Secretary of State. The report must contain the following information about the recently conducted elections:

1. The percentage of voter turnout;

2. The number of public service announcements about the election prior to the election, including during the 90-day period prior to Election Day, including a summary of media outreach (such as paid advertising, social media posts, public events, interviews, etc.);

3. The number of voter education and outreach events, including seminars or community meetings that provided voter education;

4. The number of locations where the County Recorder or officer in charge of elections provided voter information or equipment for public display and the length of time such information was on public display; and

5. A comparison of all of the statistics referenced above with the same statistics from the previous equivalent federal election.

### d. *Early Voting Report*

The County Recorder or other officer in charge of elections must submit an early voting report (which includes information for both the primary and general election) to the Secretary of State on or before December 31 of the general election year. The Secretary of State may require the counties to use a uniform electronic format provided by the Secretary of State. The report must contain the following information about the recently conducted elections:

1. The number of locations where the County Recorder established in-person early voting locations, including:

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

- The physical address or location description of each early voting location;
- The number of early ballots cast at each early voting location; and
- The total number of early ballots cast in-person at all early voting locations;

2. The number of early ballots transmitted to voters by mail;

3. The number of replacement early ballots transmitted to voters by mail;

4. The number of mailed early ballots returned by voters;

5. The number of mailed and in-person early ballots that were verified and tabulated;

6. The number of early ballots returned by voters that were not verified and tabulated, with the corresponding reason, including:

- Received after 7:00 p.m. on Election Day;
- Missing signature;
- Signature not verified;
- Returned in an unofficial envelope with no early ballot affidavit; and
- Returned by a voter that already voted in person.

### e. *Poll Worker Training Report*

The County Recorder or other officer in charge of elections must submit a poll worker report (which includes information for both the primary and general election) to the Secretary of State on or before December 31 of the general election year. The Secretary of State may require the counties to use a uniform electronic media format provided by the Secretary of State. The report must contain the following information about the recently conducted elections:

1. The number of poll workers trained;

2. A description of the types of election board workers assigned to each voting location, including:

- The number of inspectors, marshals, judges, and clerks assigned to each voting location;
- The number of "premium" poll workers (if any) assigned to each voting location or other area;
- The number of "troubleshooters" (if any) assigned to each voting location or other area; and
- The number of student poll workers (if any) assigned to each voting location or other area.

3. A summary of the mechanism used to assess individual poll workers' performance following the election;

4. The number of provisional ballots cast at each voting location; and

CHAPTER 13:
Certifying Election Results
*Canvassing the Election*

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

5. The number of signature rosters or e-pollbooks used at each voting location.

**f.  *Political Party Ballot Report***

Concurrently with submitting its primary election canvass, the County Recorder or other officer in charge of elections must file a report with the Secretary of State that identifies the total number of partisan ballots, by party, selected by voters registered as no party preference, independent, or any political party not recognized for continued representation on the ballot. A.R.S. § 16-645(B).

### B. Secretary of State's Canvassing Duties

The Secretary of State must canvass the results for any elections that include a federal, statewide, or legislative office, state appellate court judges, and statewide ballot measures.

#### 1. Deadline to Canvass Results

For primary elections and PPEs, the Secretary of State must canvass the results on or before the third Monday after the election. A.R.S. § 16-241(C); A.R.S. § 16-645(B). In the case of a PPE, the Secretary of State must promptly transmit the results to the state chairpersons of any political party that had candidates on the ballot.

For a general election, the Secretary of State must canvass the results on the fourth Monday following the election. A.R.S. § 16-648(A). The Secretary of State must conduct the general election canvass at a public meeting and in the presence of the Governor and Attorney General. A.R.S. § 16-648(A). If any statewide ballot measures appeared on the ballot, the Secretary of State must canvass the results in the presence of the Governor and Chief Justice of the Arizona Supreme Court. A.R.S. § 16-648(B).

#### 2. Scope of Duty to Canvass

The Secretary of State may postpone the canvass on a day-to-day basis for up to three days if the results from any county are missing. A.R.S. § 16-648(C). All counties must transmit their canvasses to the Secretary of State, and the Secretary of State must conduct the statewide canvass, no later than 30 days after the election. A.R.S. § 16-648(C). If the official canvass of any county has not been received by this deadline, the Secretary of State must proceed with the state canvass without including the votes of the missing county (i.e., the Secretary of State is not permitted to use an unofficial vote count in lieu of the county's official canvass).

The Secretary of State has a non-discretionary duty to canvass the returns as provided by the counties and has no authority to change vote totals, reject the election results, or delay certifying the results without express statutory authority or a court order.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

### 2. Preserving and Transmitting Canvass Results

Once the Secretary of State has certified the election results, the official canvass (along with the official final precinct level results files from each county) must be published on the Secretary of State's website. An original signed canvass must be preserved as a permanent record.

Following a general election with at least one statewide ballot measure, the Secretary of State must promptly transmit the results of each ballot measure to the Governor. A.R.S. § 16-648(B).

Following an electoral college vote to select the President of the United States, the Secretary of State must promptly transmit Certificates of Ascertainment and Certificates of Vote to the Archivist of the United States, President of the United States Senate, and the Chief Judge of the United States District Court for the District of Arizona by the deadline provided under federal law. *See* https://www.archives.gov/electoral-college/state-officials.html.

### C. City and Town Canvassing Duties

A city or town council must canvass the official election results of city or town elections in a public meeting. A.R.S. § 16-403.

A certified copy of the official canvass must be filed with the city or town clerk, which must be preserved as a permanent record. A.R.S. § 16-646(D).

### D. Special Taxing District Canvassing Duties

A special taxing district must canvass the official results for its elections in a public meeting and present the canvass results to the applicable Board of Supervisors at the Board's next regularly scheduled meeting. A.R.S. § 16-642(B).

For the purposes of an election contest pursuant to A.R.S. § 16-673, the canvass is not complete until the special taxing district results have been presented to the Board of Supervisors. A.R.S. § 16-642(B). The clerk of the Board of Supervisors is responsible for maintaining and preserving the certified permanent copy of the official canvass. A.R.S. § 16-646(D).

### E. County School Superintendent Canvassing Duties

Within 30 days following the date of any school election, the County School Superintendent must meet with the Chairperson of the Board of Supervisors or designee to canvass the returns in accordance with procedures for the canvass of returns in a general election. A.R.S 15-426(B); A.R.S. § 15-302(A)(8).

Within 14 days following the date of any community college district board election, the County School Superintendent must meet with the Chairperson of the Board of Supervisors or designee to canvass the returns in accordance with procedures for the canvass of returns in a general election.

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

Any canvass conducted by the County School Superintendent in November of an even-numbered year shall be conducted as part of the county's general election canvass. A.R.S. § 15-1442(C).

### III.   CONDUCTING AN AUTOMATIC RECOUNT

#### A.  Vote Margin that Triggers an Automatic Recount

A recount must be performed following a general, primary, special, or recall election if the margin of votes, based on the official canvass, between the two candidates receiving the highest number of votes for a particular office, or the votes cast for and against a ballot measure, are equal to 1/2 of 1% or less of the total number of votes cast for the top two candidates or the ballot measure in question. A.R.S. § 16-661(A).[89]

The automatic recount requirements do not apply for the following offices:

- Precinct committeemen;
- School district or joint technical education district board member;
- Community college district board member;
- Special taxing district board member; or
- Presidential candidate in a PPE.

A.R.S. § 16-249(B); A.R.S. § 16-661(B).

#### B.  Method of Initiating a Recount

If the official canvass demonstrates that a recount is required, the recount is automatically triggered but must be initiated by immediately seeking a court order. A.R.S. § 16-662.

Promptly following the canvass, the applicable filing officer must:

- File a lawsuit in the appropriate superior court, citing to the applicable vote margin that triggered the automatic recount and including the canvass;
- Consult with the applicable officer(s) in charge of elections and estimate the time period it will take to recount the affected ballots; and
- Obtain a signed court order that initiates the recount and sets a court hearing to announce the results, and then distribute the order to the applicable officer(s) in charge of elections.

---

[89] *See also* A.R.S. § 16-537 ("The powers and duties conferred or imposed by law upon any public officer with respect to regular elections are conferred and imposed upon such officers with respect to special elections."); A.R.S. § 19-215 ("The powers and duties conferred or imposed by law upon boards of election, registration officers, canvassing boards and other public officials who conduct general elections, are conferred and imposed upon similar officers conducting recall elections under the provisions of this article together with the penalties prescribed for the breach thereof.")

Page | 254

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

A.R.S. § 16-662; A.R.S. § 16-663(A). A third party may not request a recount as a matter of right.

### C. Method of Conducting the Recount

For any race other than the Secretary of State's race, the Secretary of State is responsible for ensuring that the electronic voting equipment to be used for the recount is available and properly programmed. Unless the Board of Supervisors race is subject to an automatic recount, the Secretary of State may delegate this duty to the Board of Supervisors, who in turn may delegate this duty to the officer in charge of elections. If a Board of Supervisors race is subject to an automatic recount, the Secretary of State may directly delegate this responsibility to the officer(s) in charge of elections. A.R.S. § 16-664(A).

If the Secretary of State's race is the race to be recounted, the Governor is responsible for performing the oversight duties normally performed by the Secretary of State in a recount. A.R.S. § 16-664(B).

If the Secretary of State delegates oversight to the Board of Supervisors, ballots from the race to be recounted will be tabulated using the same electronic voting equipment that was used during the election, except the equipment must be reconfigured to only tabulate the race(s) to be recounted. This reconfiguration constitutes a different "program" from the program used to initially tabulate votes. A.R.S. § 16-664(C).

Regardless of which electronic voting equipment is used for the recount, the equipment must be L&A tested by the officer in charge of elections (and, in the case of a legislative, statewide, or federal office or statewide ballot measure, by the Secretary of State as well).

The recount must be conducted by running paper ballots from the applicable race through the designated electronic voting equipment.[90] While the recount is in progress, the officer(s) in charge of elections may not publicly release vote totals from the recount.

At the conclusion of the recount, the officer(s) in charge of elections must provide the official results to the filing officer who initiated the recount. Once the filing officer has collected all the recount results, the filing officer must appear at the scheduled court hearing and provide the sealed results to the court. The court must declare the winner in open court. The court announcement and/or order constitute the official result for the recounted race, making it unnecessary to re-canvass the race.

Where there are discrepancies between the initial result and the result from the automatic recount, the officer in charge of elections shall undertake reasonable efforts to reconcile the discrepancy and provide a report to the Secretary of State explaining the reasons for any discrepancy.

---

[90] A recount conducted in accordance with this section is deemed to be "conducted in the accordance with the laws pertaining to contests of elections." A.R.S. § 16-663(A).

**CHAPTER 13:**
Certifying Election Results
*Conducting an Automatic Recount*

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

In a candidate race, the prevailing candidate must be issued a Certificate of Nomination or Certificate of Election at the conclusion of the court proceedings by the Clerk of the Board of Supervisors. A.R.S. § 16-647.

### D. Hand Count Audit of Recounted Ballots

A precinct hand count audit must also be conducted following a court-ordered recount pursuant to A.R.S. § 16-661 through A.R.S. § 16-666 for legislative, statewide and federal candidate races only. This means any ballots that have been electronically re-tabulated for purposes of such a recount are treated as if a new election took place and therefore are again subject to hand count audit requirements.

The same procedures for a precinct hand count shall be followed except that the officer in charge of elections and the political parties must conduct a hand count of at least 5% of precincts for the recounted race. A.R.S. § 16-663(B). In counties that conduct vote center-based elections, the officer in charge of elections and the political parties must conduct a hand count of at least 5% of vote centers.

### IV.    ISSUING CERTIFICATES OF NOMINATION AND ELECTION

Upon completion of the applicable canvass or recount process, a city or town council (or designee) must promptly issue a Certificate of Nomination (following a primary or first election) or Certificate of Election (following a general or second election) to each candidate who received the highest number of votes for each office at the election.

Likewise, upon completion of the county's canvass or recount process, the Clerk of the Board of Supervisors must promptly issue a Certificate of Nomination (following a primary election) or Certificate of Election (following a general election) to each candidate who received the highest number of votes for the following offices:

- All county offices;
- Precinct committeemen;
- Community college district board member; and
- Special taxing district board member. A.R.S. § 16-645.

Certificates of election for school district board members must be issued by the county school superintendent following the applicable canvass. A.R.S. § 15-426.

However, a certificate may not be issued under the following conditions:

- A Certificate of Nomination may not be issued to a write-in candidate for a city or town office, and that candidate may not advance to the general or run-off election if the write-in candidate did not receive a number of votes equivalent to at least the number of signatures required by A.R.S. § 16-322 for nominating petitions for the same office, A.R.S. § 9-821.01(F);

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

- A Certificate of Nomination may not be issued to a write-in candidate from a political party recognized for continued representation who did not receive at least as many votes as the number of signatures required to appear on the primary election ballot, A.R.S. § 16-645(E);

- A Certificate of Nomination may not be issued to a write-in candidate of a political party not recognized for continued representation who did not receive a plurality of the votes of the party for the office for which the candidate is a candidate, A.R.S. § 16-645(D); and

- A Certificate of Election may not be issued to a write-in candidate for precinct committeemen or nonpartisan office who did not receive at least as many votes as the number of signatures required to appear on the ballot, A.R.S. § 16-322(A)(6), (8)-(10), A.R.S. § 16-645(C).

Following completion of the statewide canvass or recount process (and subject to the same exception for write-in candidates from a political party not recognized for continued representation), the Secretary of State must promptly issue a Certificate of Nomination or Certificate of Election to each legislative, statewide, and federal candidate who received the highest number of votes for each office at the election. The Certificate of Election must be signed by the Secretary of State and authenticated with the Great Seal of the State of Arizona. A.R.S. § 16-645(B); A.R.S. § 16-650.

## V.    ISSUING BALLOT MEASURE PROCLAMATIONS

At the conclusion of a statewide canvass that contains a ballot measure, the Governor must issue a proclamation that:

- Proclaims the number votes cast for and against each proposed constitutional amendment;

- Proclaims the number of votes cast for and against each proposed initiative or referendum; and

- Declares which measures were approved by a majority of those voting on the measures.

A.R.S. § 16-651; A.R.S. § 19-126(A). If there are two or more conflicting measures approved at the same election, the Governor must proclaim which measure received the greatest number of affirmative votes. A.R.S. § 19-126(B). If two or more conflicting measures (in whole or in part) are approved by voters at the same election, the measure with the most votes will prevail with respect to any provisions that are in conflict. Ariz. Const. Art. IV, Pt. 1, § 1(12).

For any approved measure, the Secretary of State must cause the measure to be printed with the general laws enacted by the next ensuing session of the Arizona Legislature, along with the date of the Governor's proclamation declaring the measure to be approved. A.R.S. § 19-127(B).

## VI.    STORAGE OF BALLOTS AND RETURNS OF THE ELECTION

After the county canvass is complete, the officer in charge of elections must seal the voted ballots and deliver these ballots and official returns to the County Treasurer (or a secure facility contracted

Page | 257

*ARIZONA SECRETARY OF STATE*
*2023 ELECTIONS PROCEDURES MANUAL*

by the County Treasurer) for secure storage. A.R.S. § 16-624(A). If voting equipment produces digital ballot images, the digital ballot images must be retained and preserved in the same manner. A.R.S. § 16-625. Unused ballots are not subject to retention.

The County Treasurer must keep the ballots and official returns unopened and unaltered for a period of 24 months following an election for federal office and six months for all other elections. During these retention periods, ballots and official returns may only be opened pursuant to a court order (including for the purpose of a recount or election contest). In the absence of any recount or election contest, the County Treasurer must dispose of the ballots and official returns after the applicable retention period without opening or examining the contents. A.R.S. § 16-624(A), (D).

If a county conducts an election on behalf of a local jurisdiction, the county officer in charge of elections may transfer the official returns to the local jurisdiction (which thereafter must be preserved by the local jurisdiction in lieu of the County Treasurer).

To ensure the security and integrity of ballots, and protect against inadvertent or intentional tampering or damage to ballots during the required retention period, in the rare circumstances in which election officials or any other officials must, pursuant to court order or other compulsory process, access and/or otherwise handle ballots after they have been securely stored for retention, those officials shall implement adequate procedures to maintain the security, integrity, and chain of custody of the ballots, including, at minimum, the requirements that apply to election officials' handling of voted ballots described in this Elections Procedures Manual. Civil Rights Act of 1960, 52 U.S.C. § 20701.

The U.S. Department of Justice interprets the Civil Rights Act of 1960, 52 U.S.C. § 20701, to require that federal election records, including ballots, must "be retained either physically by election officials themselves, or under their direct administrative supervision." If election officials are required to hand over election records to other officials, "administrative procedures [must] be in place giving election officials ultimate management authority over the retention and security of those election records, including the right to physically access" the records. In other words, in addition to the requirements imposed by state law, federal law requires retention and preservation of federal election records, including maintaining the security, integrity, and chain of custody of ballots, regardless of who has physical possession of those records.[91] The same requirements apply to private vendors. A private vendor may only take custody of voted ballots, either before or after the election, if properly contracted and supervised by the appropriate election officials.

---

[91] See U.S. Dept. of Justice, *Federal Law Constraints on Post-Election "Audits"* (July 28, 2021), available at  https://www.justice.gov/opa/press-release/file/1417796/download;  U.S.  Dept.  of  Justice,  *Federal Prosecution   of   Election   Offenses*,   at   75-80   (Dec.   2017),   available   at https://www.justice.gov/criminal/file/1029066/download.

Page | 258

CHAPTER 13:
Certifying Election Results
*Storage of Ballots and Returns of the Election*

# Exhibit A



# **2019** ELECTIONS PROCEDURES MANUAL

**December 2019**

www.azsos.gov



1700 W. Washington St. Phoenix, AZ 85007



1-877-THE-VOTE (843-8683)



**STATE OF ARIZONA**

# ARIZONA
# ELECTIONS PROCEDURES MANUAL

A PUBLICATION OF
THE ARIZONA SECRETARY OF STATE'S OFFICE
ELECTIONS SERVICES DIVISION

**INTRODUCTION**
**FROM SECRETARY OF STATE KATIE HOBBS**

**December 2019**

I am pleased to provide the 2019 Elections Procedures Manual to county, city, and town election officials and other stakeholders throughout Arizona. Completing a long overdue update to the Elections Procedures Manual has been one of my Administration's highest priorities since transitioning into office in January 2019. To accomplish this, we worked in close partnership with County Recorders, Elections Directors, and their staff, and carefully considered feedback from other stakeholders and the public. With their invaluable contributions, we believe the 2019 Elections Procedures Manual will help ensure the maximum degree of correctness, impartiality, uniformity, and efficiency in election procedures across the state.

Secure, accurate, and accessible elections are at the heart of our democracy and they would not be possible without the continued dedication and vigilance of election workers across the State. Thank you for all that you do for Arizona's voters.

Sincerely,

Katie Hobbs
Arizona Secretary of State



**STATE OF ARIZONA**

DOUGLAS A. DUCEY
GOVERNOR

**OFFICE OF THE GOVERNOR**

EXECUTIVE OFFICE

December 20, 2019

The Honorable Katie Hobbs
Arizona Secretary of State
1700 West Washington Street, 7th Floor
Phoenix, AZ 85007

Dear Secretary Hobbs:

My office has reviewed the 2019 version of the Arizona Secretary of State Election Procedures Manual (2019 Procedures Manual) that you submitted for approval on December 18, 2019.

Based upon review and approval submitted on December 19, 2019 by the Attorney General's Office that the 2019 Procedures Manual complies with the Arizona election laws, and my office's review, I hereby approve the 2019 Procedures Manual in accordance with A.R.S. § 16-452(B).

Sincerely,

Douglas A. Ducey
Governor
State of Arizona



MARK BRNOVICH
ATTORNEY GENERAL

OFFICE OF THE ATTORNEY GENERAL
STATE OF ARIZONA

December 19, 2019

The Honorable Katie Hobbs
Arizona Secretary of State
1700 E. Washington Street
Phoenix, Arizona 85007

      Re:    Approval of the 2019 Elections Procedures Manual

Secretary Hobbs:

      Pursuant to A.R.S. § 16-452(B), my office has reviewed the draft Elections Procedures Manual submitted December 18, 2019.  Based upon that review, we believe the submitted manual complies with Arizona's election statutes.  Accordingly, I approve the Elections Procedures Manual as submitted on December 18, 2019.

      Sincerely,

Mark Brnovich
Attorney General
State of Arizona

cc: Governor Doug Ducey

2005 North Central Avenue • Phoenix, Arizona • 85004 • Phone (602) 542-3333 • Fax (602) 542-8308 • WWW.AZAG.GOV

equipment prior to opening the polls. The zero report is intended to confirm that the equipment contains no votes prior to commencement of voting.

To verify a zero report, the election board must:

- Print a zero report from the equipment (the report must remain attached to the voting equipment and not removed until final results have been printed at the close of the polls);
- Verify the correct precinct number on the report (only in counties that conduct assigned polling place elections);
- Compare the zero report to the ballot and sample ballot to ensure the same names appear (only in counties that conduct assigned polling place elections);
- Confirm that no votes have been cast for any candidates or ballot measures;
- Have at least two board members of different political parties sign the zero report prior to opening the polls; and
- Make sure the digital readout on the front of the unit registers zero after the zero report is complete.

The election board may be required to perform other necessary tasks prior to opening the voting location.

At 6:00 a.m., the marshal must announce that the polls are open, and voters will be allowed to enter the voting location. A.R.S. § 16-565.

## III. PRESERVING ORDER AND SECURITY AT THE VOTING LOCATION

### A. Enforcing Electioneering Ban

No electioneering may take place within the 75-foot limit of a voting location. A.R.S. § 16-515(A). Additionally, no electioneering may take place outside the 75-foot limit if it is audible from a location inside the door to the voting location. The 75-foot limit is measured from the main outside entrance of the voting location.

"Electioneering" occurs when a person knowingly, intentionally, and verbally expresses support for, or opposition to, a candidate or ballot measure on the ballot in that election, or a political party with one or more candidates who appear on the ballot in that election, in order to induce or compel another person to vote in a particular manner or to refrain from voting. A.R.S. § 16-515(I).

The electioneering ban applies to the election board, other election officials, political party observers, and any voter within the 75-foot limit.

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

Though voters or voters' assistants are permitted to wear clothing with political messages, election board members, other election officials, or political party observers may not wear, carry, or display any materials that identify or express support or opposition for a political party, political organization, or a candidate or ballot measure appearing on the ballot. A.R.S. § 16-515(F).

The marshal, under the direction of the officer in charge of elections, enforces the electioneering ban on Election Day, while the County Recorder enforces the ban during in-person early voting and at ballot replacement sites. Law enforcement officials may be contacted to help enforce the ban in exceptional circumstances.

A County Recorder or other officer in charge of elections may grant emergency designations to polling places/vote centers, pursuant to which electioneering is not permitted on the property of the hosting facility, even outside the 75-foot limit. A.R.S. § 16-411(I); *see* Chapter 8, Section I(G).

## B. Enforcing Photography Ban

No photography or video recording is permitted within the 75-foot limit at a voting location. A.R.S. § 16-515(G). There is no exception for members of the media.

A voter, however, may display an image, that was not taken in a voting location, of their own ballot that was received by mail on the internet. A.R.S. § 16-1018(4).

## C. Enforcing Access Restrictions

A key component of preserving order at the voting location is ensuring that only authorized persons are present within the 75-foot limit. Only the following persons are authorized to be present within the 75-foot limit:

1. Members of the election board;

2. Election officials;

3. Voters (including minor children accompanying the voter, A.R.S. § 16-515(E));

  - Once in a voting booth, voters must vote promptly and move outside the 75-foot limit after voting. A.R.S. § 16-515(A); A.R.S. § 16-580(B)-(C).

4. A person selected by the voter to assist him or her voting (*see* Chapter 9, Section V);

5. Authorized political party observers (*see* Chapter 8, Section III); and

6. U.S. Department of Justice or other authorized federal government observers.

Unauthorized persons may not be present within the 75-foot limit, including but not limited to the following persons:

1. Members of the media;

2. Researchers;

Page | 179

**CHAPTER 9:**
Conduct of Elections/Election Day Operations — *III. Preserving Order and Security at the Voting Location*

**ER-422**

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

3. Persons who conduct exit polls; or

4. Political party or campaign representatives without authorized political party observer status seeking "tear sheets."

   - Tear sheets are copies of the poll list where voters are entered in the order of voting, which are utilized by political parties to identify which persons have and have not voted at a particular voting location. If a county utilizes tear sheets, only authorized political party observers are authorized to acquire the tear sheets. *See* Chapter 8, Section III.

### 1. Simultaneous Activities Permitted at Voting Location

Regular business activity that normally occurs at the voting location may continue on Election Day, as long as the activity does not interfere with the voting process or result in electioneering. For example, a city clerk's office used as a voting location may require persons to cross or temporarily remain within the 75-foot limit in order to conduct city business. Additionally, Native American tribal election boards may be co-located with traditional election boards at the same voting location if a tribal election is held on the same day and time. A.R.S. § 16-515(D).

### D. Preventing Voter Intimidation

Any activity by a person with the intent or effect of threatening, harassing, intimidating, or coercing voters (or conspiring with others to do so) inside or outside the 75-foot limit at a voting location is prohibited. A.R.S. § 16-1013. The officer in charge of elections has a responsibility to train poll workers and establish policies to prevent and promptly remedy any instances of voter intimidation.

The officer in charge of elections should publicize and/or implement the following guidelines as applicable:

- The inspector must utilize the marshal to preserve order and remove disruptive persons from the voting location. The inspector and/or marshal must use sound judgment to decide whether to contact law enforcement, and any higher-level decisions should be raised through the officer in charge of elections.

- Persons who witness problems at a voting location should not speak to or accost a voter in an attempt to "enforce" the law, but rather inform the inspector or marshal to allow them to resolve the issue.

- Private citizens are prohibited from bringing weapons into a polling place (including the 75-foot limit), even if the voter is properly licensed to carry such weapons. In order to keep voting locations safe and free of potential intimidation, therefore, observers at voting locations should leave weapons at home or in their vehicles. A.R.S. § 13-3102(A)(11) (exceptions apply for military and peace officers in the performance of official duties, *see* A.R.S. § 13-3102(C)).

*ARIZONA SECRETARY OF STATE*
*2019 ELECTIONS PROCEDURES MANUAL*

In addition to the potentially intimidating conduct outlined above, the following may also be considered intimidating conduct inside or outside the polling place:

• Aggressive behavior, such as raising one's voice or taunting a voter or poll worker;

• Using threatening, insulting, or offensive language to a voter or poll worker;

• Blocking the entrance to a voting location;

• Disrupting voting lines;

• Intentionally disseminating false or misleading information at a voting location, such as flyers or communications that misstate the date of the election, hours of operation for voting locations, addresses for voting locations, or similar efforts intended to disenfranchise voters;

• Directly confronting or questioning voters in a harassing or intimidating manner;

• Asking voters for "documentation" or other questions that only poll workers should perform;

• Raising repeated frivolous voter challenges to poll workers without any good faith basis, or raising voter challenges solely based on race, ethnicity, national origin, language, religion or disability; or

• Posting signs or communicating messages about penalties for "voter fraud" in a harassing or intimidating manner.

*See* A.R.S. § 16-1013(A); A.R.S. § 16-1017.

## IV.    CHECKING VOTER IDENTIFICATION

Voters are required to prove identity at the voting location before receiving a ballot on Election Day. A.R.S. § 16-579(A). The same requirements for proving identity now also apply during in-person early voting, including at an on-site early voting location, emergency vote center, or through personal early ballot delivery by a special election board. *See* Chapter 2, Sections II(B).

Acceptable forms of identification fall into one of three categories:

• A valid form of photo identification with the voter's photograph, and name and address that reasonably match the name and address in the signature roster or e-pollbook (List 1);

• Two separate valid forms of non-photo identification with the voter's name and address that reasonably match the name and address in the signature roster or e-pollbook (List 2); or

• One valid form of identification with the voter's photograph, name, and address not reasonably matching the address in the signature roster or e-pollbook or a valid U.S. passport or military identification with the voter's name and photograph, *and* one valid form of non-photo identification from List 2 (List 3).

A.R.S. § 16-579(A)(1)(a)-(c). Each list is described in greater detail in the sections below.